639 So.2d 882 (1994)
John Turner FOUNTAIN
v.
Andre' WAGUESPACK, divorced wife of John Turner Fountain.
No. 93-CA-1077.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1994.
*883 Allison Parker Burbank, Metairie, for plaintiff/appellee.
Ronald L. Courtade, Jr., Metairie, for defendant/appellant.
BARRY and KLEES, JJ., and GULOTTA, J. Pro Tem.
BARRY, Judge.
Ms. Waguespack appeals a judgment which named her ex-husband, John Fountain, the primary custodial parent of their three boys. Mr. and Mrs. Fountain were domiciled in Jefferson Parish during their marriage and she filed for a divorce in the 24th Judicial District. In a February 23, 1989 default judgment the parents were awarded joint custody of the three boys and Ms. Waguespack was designated the primary, domiciliary parent.[1] An April 18, 1991 consent judgment amended the default judgment and designated Mr. Fountain the primary domiciliary parent until June 1, 1992. The boys lived with their father during that 14 month period.
During that time Ms. Waguespack moved to Iberia Parish and Mr. Fountain moved to Plaquemines Parish. On June 1, 1992 Mr. Fountain returned the boys to their mother and they resided in Iberia Parish until August when they visited their father, his second wife and her children by a previous marriage. During the boys' stay in Plaquemines Parish Mr. Fountain filed a petition to modify custody and child support. Ms. Waguespack filed an exception of improper venue which was overruled on September 4, 1992. In a September 28, 1992 judgment the trial court granted joint custody, designated Mr. Fountain the primary custodian, and ordered Ms. Waguespack to pay $375 monthly child support.
Ms. Waguespack specifies as error:
1) denial of the venue exception;
2) allowing Mr. Fountain to relitigate custody without showing a change of circumstances or meeting the standard in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986);

*884 3) holding her to the Bergeron standard and denying her primary custody.
Mr. Fountain answered the appeal and specifies as error:
1) awarding joint custody instead of sole custody to him;
2) the amount of child support Ms. Waguespack is to pay.

VENUE

(Ms. Waguespack's Error # 1)
Ms. Waguespack did not file a supervisory writ as to the denial of her exception of venue, the appropriate procedure for review of that ruling. Blitch Architects, Inc. v. Avenue Partnership, 626 So.2d 394 (La.App. 4th Cir.1993); Henry v. Ford Motor Company, 519 So.2d 845 (La.App. 4th Cir.1988). In her petition and order for appeal Ms. Waguespack states that she is appealing the September 28, 1992 judgment which grants Mr. Fountain's rule to change custody. The notice of appeal shows that only the September 28, 1992 judgment is being appealed. Ms. Waguespack did not appeal the September 4, 1992 judgment on the venue exception and we have no basis to review that judgment.
Regardless, the assignment has no merit. Under La.C.C.P. art. 74.2 B the proper venue for a change of custody is "the parish where the person awarded custody is domiciled or in the parish where the custody decree was rendered." When there is joint custody the use of the singular "parish" in the article means that the parish of the domiciliary parent is the proper venue. St. Amant v. St. Amant, 564 So.2d 1312 (La.App. 1st Cir.1990), writ denied 567 So.2d 622 (La. 1990). The trial court accepted that "for purposes of determining the proper venue to modify previous custody decrees, the St. Amant rule is invalid."
It is unclear whether Mr. Fountain or Ms. Waguespack was the primary custodial or domiciliary parent at the time Mr. Fountain filed to change custody. According to the February 23, 1989 default judgment Mrs. Waguespack was the primary custodial parent from 1989 to 1991. By April, 1990 Mr. Fountain had physical custody of the boys. Pursuant to a consent judgment, Mr. Fountain became primary domiciliary parent from April 18, 1991 to June 1, 1992:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that John Turner Fountain be and he is hereby designated primary domiciliary parent and granted care and control of said minor children, subject to the reasonable and liberal visitation privileges in favor of Andre' Waguespack Fountain, until June 1, 1992.
The consent judgment makes no provision after June 1, 1992. Whether Ms. Waguespack or Mr. Fountain was the primary custodial domiciliary parent during the summer of 1992 (when Mr. Fountain's motion was filed) is impossible to determine. The court concluded that the language in the 1991 judgment did not revive the 1989 judgment (which provided that Ms. Waguespack was the domiciliary parent) when it ended on June 1, 1992. The court noted that the consent judgment in 1991 made Mr. Fountain the domiciliary parent.
Mr. Fountain had been the custodial parent until June 1, 1992. The children were with Mr. Fountain in Plaquemines Parish when he filed to change custody on August 6, 1992. Under these circumstances the denial of Ms. Waguespack's venue exception was not error.
This assignment has no merit.

CUSTODY

(Ms. Waguespack's Errors # 2 and 3)
Ms. Waguespack argues that the court incorrectly held her to the Bergeron standard to change custody and improperly weighed the evidence. Mr. Fountain counters that the trial court considered the best interest of the children despite the limited use of Bergeron language in its reasons.
The pre-1994 version of La.C.C. art. 131 A is applicable and provided that custody should be based on the best interest of the child.[2] La.C.C. art. 131 E provided that any *885 order under Paragraph A might be modified or terminated if the best interest of the child required modification. La.C.C. art. 134 provided that custody after an original award shall be granted to the parents in accordance with La.C.C. art. 131.
Traditionally a party seeking modification of a custody judgment had to show a change of circumstances materially affecting the child's welfare. Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972). In Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986), the Louisiana Supreme Court set forth the burden of proof to change custody when there was a prior judgment:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. (Citations omitted).
The judgments here are not clear as to the custody of the boys after June 1, 1992. In the February 23, 1989 default judgment Ms. Waguespack was named primary custodial parent. Pursuant to an April 18, 1991 consent judgment, Mr. Fountain was named primary domiciliary parent "until June 1, 1992." In its reasons the trial court declared that the 1991 consent judgment ended as of June 1, 1992 and therefore both parents could relitigate custody without establishing a change of circumstances or meeting the Bergeron standard. In a footnote the court noted that Ms. Waguespack never petitioned to modify the April 18, 1991 judgment (which arguably remained in effect), but stated it would nonetheless consider the custody matter "as if it were presented res nova, accepting that it is ripe for adjudication as of June 1, 1992." The court noted there had been a substantial change of circumstances as to each parent since 1991. The court stated that neither parent would be "procedurally estopped" from relitigating the custody issue "by the Bergeron rule in terms of a change of circumstance." After quoting Bergeron the court declared that the heavier burden of proof is "a tool in proving the ultimate issue in custody cases," the best interest of the child, which is the sole criterion in awarding or modifying custody.
Mr. Fountain alleged in his petition to modify custody and child support that the children's mother intended to move the children into her parent's home in New Iberia where she did not have a job. Mr. Fountain argued that he could not provide medical coverage in New Iberia. The children would be prevented from seeing him or living in the house which he and his second wife purchased for their combined family. Mr. Fountain noted that his second wife was not working outside the home and devoted her time to her children from a previous marriage and to his boys. He claimed that Ms. Waguespack was unable to act in the children's best interest.
The trial court focused on the ultimate consideration, the best interest of the boys, and properly utilized pre-1994 La.C.C. art. 131 C(2)(a) which listed twelve factors to be considered if the presumption in favor of joint custody would be rebutted:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

*886 (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
Under the first factor the trial court concluded that both parents loved the children, but noted that Ms. Waguespack relinquished the boys from early 1990 until June, 1992 and saw them only sporadically. During that time Mr. Fountain provided a stable environment and the boys developed a close bond with their stepmother. The court concluded that factor militated in Mr. Fountain's favor.
The court considered Art. 131 C(2)(b) and (c) relating to the provision of food and necessities and religious education and concluded that those factors favored neither parent.
The court then carefully considered the time the children had lived in a stable environment. Art. 131 C(2)(d). The court noted that the boys had lived for over two years in Mr. Fountain's family unit which for some time had included his second wife, Lisa, and her two children. The boys had resided in the same Belle Chasse house for a year and a half. They never had such a stable environment when their parents were married. The court heard the testimony of two teachers and a guidance counselor which indicated that the boys were well adjusted even though the oldest had experienced a difficult period of adjustment.
The court quoted Bergeron and concluded that Ms. Waguespack did not show that the environment at Mr. Fountain's house was so deleterious to warrant modifying the custody decree. Ms. Waguespack had not shown that advantages in New Iberia would outweigh the harm of changing their environment.
Mr. Fountain concedes that the court used Bergeron language. He argues that the very detailed reasons show that the court conducted a fair analysis to decide what was best for the boys. The court made it clear that the best interest of the boys was its sole concern. In three and one-half pages prior to mentioning the Bergeron language, the court considered which parent could provide a stable environment as if considering the issue res nova. The court concluded that Mr. Fountain had provided such an environment for two years.
The court did not use the Bergeron standard in its overall determination. The court considered the stability of Mr. Fountain's family under Art. 131 C(2)(e) and concluded that factor favored him.
The court found no evidence to favor either parent's moral fitness or health under Art. 131 C(2)(f) and (g).
Discussing Art. 131 C(2)(h) relating to the school and community record of the boys, the court noted that all of the boys were doing well in school and at home, they had friends, and they were involved in community sports. The court stated the "lack of any compelling reason to remove them from their environment." Although Ms. Waguespack cites this as an example of improperly using Bergeron, the court was justified in concluding that factor was in Mr. Fountain's favor regardless of the wording.
The court did not seriously consider the preference of the children under Art. 131 C(2)(i) and did not find that (j) relating to the parents' willingness to encourage a relationship with the other parent militated in either parent's favor. The court continued joint custody, even though the parents were living many miles away, with the hope that it would *887 lead to greater cooperation, C.C. art. 131 C(2)(k), and noted no other significant factors, C.C. art. 131 C(2)(1).
The court concluded that "there is no question that it is in their [children's] best interest to stay where they are." The court explained in 16 pages of reasons how it weighed the facts, the evidence and the testimony to conclude that the boys should remain with Mr. Fountain. There was no misuse of the Bergeron standard. Even if the trial court utilized that language, the record clearly supports the decision to have the boys live with their father as primary domiciliary parent under the best interest standard.
The trial court's determination in child custody matters is entitled to great weight. The court's discretion will not be disturbed on review absent a clear showing of abuse. Norris v. Norris, 604 So.2d 107 (La.App. 2d Cir.1992). We find no reason to disturb the court's decision.
Ms. Waguespack's Errors # 2 and # 3 lack merit.

JOINT CUSTODY

(Mr. Fountain's Error # 1)
In his answer to Ms. Waguespack's appeal, Mr. Fountain argues that he should have sole custody of the boys. Because La. C.C. art. 131 C declares that there is a rebuttable presumption that joint custody is in the best interest of the children, Mr. Fountain bore the burden of rebutting that presumption. He did not ask for sole custody in his petition to modify custody and child support. He sought only to be named primary domiciliary parent. Regardless the trial court correctly concluded that joint custody was appropriate. In reasons the court declared Ms. Waguespack and Mr. Fountain were "two respectable (sic) decent individuals who both want to provide the primary care for their children."
Assuming that the testimony expanded the pleadings under La.C.C.P. 1154, Mr. Fountain's contentions in support of sole custody are not persuasive. He points to the issue of religion. Ms. Waguespack, who had been a fervent Catholic during the marriage, became a reborn Christian member of a fundamentalist church and did not allow the boys to attend mass with her parents. He also noted problems because he and Ms. Waguespack could not agree on anything from school to physicians.
There will always be such difficulties when implementing a joint custody arrangement. There is no basis to disturb the trial court's decision to continue joint custody.
Mr. Fountain's first argument (labeled issue # 4) lacks merit.

CHILD SUPPORT AWARD

(Mr. Fountain's Error # 2)
Mr. Fountain argues that the trial court erred in setting child support of $375 monthly to be paid by Ms. Waguespack. According to the court's work sheet, Mr. Fountain's gross monthly income was $3,741.66 and Ms. Waguespack's income was $1,492.33, a total of $5,233.99. The court found Mr. Fountain's percent to be 71.5% and Ms. Waguespack's percent to be 28.5%. The court used $1,398.26 as the basic child support obligation. The court noted that both parties were paying health insurance premiums for the children.
Mr. Fountain argues that his cost for medical premiums should have been added to the child support. He placed in evidence a check stub which showed $181.00 was deducted monthly for such a premium. However, Mr. Fountain covered his second wife and her children under the Aetna HMO family coverage as well as himself and the boys. He divided the amount of the total premium by seven and calculated $77.57 that he paid for the boys. The check stub does not indicate that the premium was broken down for each child. Mr. Fountain did not submit his contract with the HMO. Most HMOs including Aetna provide a premium for family coverage; the employee does not pay more for additional children. Mr. Fountain presented no proof that he paid separate premiums to cover the boys in addition to the family coverage premium. Under the circumstances the trial court did not err by excluding the premium from the monthly obligation under La. R.S. 9:315.4.
*888 Mr. Fountain also argues that the trial court erred by setting the child support at $375.00 when $398.50 applies under the guidelines. He also claims the court erred by making her obligation prospective and by considering his second wife's child support, but not the monetary help provided by Ms. Waguespack's parents.
The trial court explained its adjustment below the guideline figure and stated it "contemplates" that Mr. Fountain's second wife, who did not work, contributed the child support she was receiving for her children. The court noted that Ms. Waguespack was receiving help from her parents and said that "the relative disparity in income of the two parties does not warrant such an accounting." The court declared that "paying the full amount provided by the guidelines would serve only to impede her [Ms. Waguespack's] ability to have meaningful and frequent visitation of the children." Mr. Fountain counters that the court's concerns do not fall under the considerations of La.R.S. 9:315.1 A, B, or C(1)-(6). Mr. Fountain does not mention R.S. 9:315.1 C(7) which includes any other consideration which would make application of the guidelines not in the best interest of the children or inequitable to the parties. Although the court went beyond the evidence in its assumptions, the court stated valid reasons to justify its decision.
The court made the child support prospective because Ms. Waguespack had recently become employed. We find that was "good cause" under La.R.S. 9:310 C. We will not disturb the trial court's decision.
Mr. Fountain's second argument (labeled fifth issue) lacks merit.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] In the April 18, 1991 judgment the February 23, 1989 judgment is incorrectly noted as a consent judgment. In reasons for the September 28, 1992 judgment the trial court correctly noted that the February 23, 1989 judgment was a default judgment.
[2] The 1994 version declares "the court shall award custody of a child in accordance with the best interest of the child." It does not apply to actions commenced before January 1, 1994. 1993 La. Acts, No. 261.