728 So.2d 914 (1999)
Tina Davis DeGRUY
v.
Gregory Gerrard DeGRUY.
Nos. 98-CA-1416, 98-CA-1811.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1999.
*915 Elizabeth Rue Brennan, New Orleans, Louisiana, Attorney for Plaintiff/Appellant.
Edith H. Morris, Suzanne Ecuyer Bayle, Bernadette R. Lee, New Orleans, Louisiana, Attorneys for Defendant/Appellee.
*916 Court composed of Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER, and Judge PATRICIA RIVET MURRAY.
JONES, Judge.
Plaintiff/appellant, Tina DeGury, and her attorney of record, Elizabeth Rue Bridgeman, appeal the judgment of the trial court, whereby they were found in contempt of court during a hearing on the defendant's motion for contempt in a domestic relations case. Mrs. DeGruy was found in constructive contempt for her failure to abide by an order issued by the trial court. Ms. Bridgeman was found in direct contempt by the trial court for her disruptive and disrespectful behavior to the trial court during the contempt hearing. After reading the record, we affirm the ruling of the trial court.
The plaintiff and her attorney dispute the claim brought by the defendant, Gregory DeGruy, who alleged that the plaintiff purposefully violated the order of the trial court when she, with the assistance of her attorney, removed personal property from the family home. Mr. DeGruy also contends that plaintiff arbitrarily cancelled a meeting with the special master appointed to their case, and failed to deposit the fees for the special master in the registry of the court.

PROCEDURAL HISTORY
According to the record, the trial court[1] issued an order, on October 3, 1996, regarding a partition of community property, authorizing certain items to be removed from the community home by the civil sheriff and a moving company. The order also stated that neither the parties nor any of their relatives were to be present when the civil sheriff and the movers were at the home.
On October 11, 1996, the defendant, Gregory DeGruy, filed a rule for contempt, attorney fees and court costs against Tina DeGruy. He alleged in his contempt rule that Mrs. DeGruy's father, Charles Davis purposefully disobeyed the court's order by being present at the community home when the civil sheriffs were moving community possessions. Charles Davis was present when the trial court issued its order.
Along with disobeying the court's order, Mr. DeGruy alleged that a number of his personal items were either disturbed, moved or missing. He contended in his rule for contempt that Mr. Davis tampered with these items because he was inside the community home when the civil sheriffs were there. Moreover, he complained that the plaintiff hired a private security company to monitor the area, which aggravated the situation.
On November 4, 1996, the trial court entertained the defendant's rule for contempt, and determined from the arguments presented that Mr. Davis was in contempt of court. Moreover, plaintiff's attorney, Ms. Bridgeman, stipulated on the record that Mr. Davis was present at the house when the civil sheriffs were removing the furniture, and that Mr. Davis had hired a private security company to supervise the move. Ms. Bridgeman also stated on the record that she instructed Mr. Davis to go to the community home to deliver the "community list"[2] to the civil sheriffs. Ms. Bridgeman stated that she knew that Mrs. DeGruy's parents were going to hire a private security company immediately after the trial court issued its orders.
After Ms. Bridgeman made these admissions on the record, the trial court admonished Ms. Bridgeman for fostering such behavior from her client and her client's parents, and concluded that Mrs. DeGruy was in constructive contempt of court. The trial court then ordered Mrs. DeGruy to reimburse the defendant in the amount of $60 for expenses incurred in paying the civil sheriff. At the conclusion of this hearing, the trial court ordered both parties to deposit $1,000 in the registry of the court for the appointment of a special master to mediate and resolve the community property dispute.
*917 On January 2, 1997, plaintiff's attorney, Ms. Bridgeman, sent a letter to the special master enclosing a copy of the defendant's rule for contempt, the plaintiff's exception and motion for sanctions, and the community property settlement which was previously signed by both parties. On March 27, 1997, the plaintiff filed a motion to rescind the order appointing a special master, arguing that neither the plaintiff nor the defendant had the financial resources to place $1,000 in the registry of the court. The plaintiff also alleged that appointing a special master to mediate the community property dispute would be a "waste of time" because the special master could only make recommendations to the court, thereby leaving the ultimate decision to the trial court.
On December 23, 1997, the defendant filed a preemptory exception of res judicata alleging that the time period to review the judgment appointing the special master had expired. The defendant also requested in his motion that plaintiff's motion to rescind the special master should be dismissed at plaintiffs costs. The defendant also filed a rule for contempt, alleging that the plaintiff arbitrarily refused to meet with the special master notwithstanding the parties mutual agreement to meet by a specific date and time with the special master.
On January 29, 1998, the rule for contempt, and the exceptions filed by both parties were heard by Judge Nadine Ramsey. The trial court denied the motion to rescind the special master and granted the defendant's rule for contempt against the plaintiff. The trial court also instructed the plaintiff to deposit $1,000 into the registry of the court and ordered both parties to meet with the special master within five days from the date of the hearing. Immediately following its ruling on the motion to rescind, the trial court held Ms. Bridgeman in direct contempt of court for her disruptive behavior during the proceeding. In its judgment signed on February 6, 1998, the trial court found Ms. Bridgeman in direct contempt of court, sentenced her to serve 24 hours in the Orleans Parish Prison, and ordered her to pay a fine of $100 into the registry of the court.
On February 25, 1998, plaintiff filed a motion styled "Motion for Partial New Trial and Motion for Contempt." In this motion, plaintiff requested that the trial court vacate its contempt order against her and her counsel, award her attorney fees and costs, grant a new trial, and sanction the defendant for making several "misrepresentations" to the court. The trial court denied the motion on March 3, 1998, and from this ruling, the plaintiff and Ms. Bridgeman appeal.

DISCUSSION
There are two relevant issues before this Court. The first issue we note, sua sponte, is whether the procedural device selected by the appellant (i.e., an appeal) was proper. The second issue is whether the trial court's finding of contempt against Mrs. DeGruy and Ms. Bridgeman was proper.

PROCEDURAL DEVICE
In order to determine whether an appeal was proper, we must identify and classify the type of ruling made by the trial court herein. According to LSA-C.C.P. art. 1841, only final judgments are appealable. A ruling that decides the merits of the case in whole or in part is appealable. However, when a ruling decides preliminary matters only, and such matters do not present irreparable injury then they are considered to be interlocutory, and are non-appealable. See LSA-C.C.P. art.2083.
An order by the trial court refusing to recuse the judge in a matrimonial action is a non-appealable interlocutory order. See Goodwin v. Goodwin, 607 So.2d 8 (La.App. 2 Cir.1992). A ruling denying the husband's claim for interim rental payments on a newly constructed house was also classified as a non-appealable interlocutory order. See Pelafigue v. Sudduth, 95-1305 (La.App. 3 Cir. 12/7/95), 666 So.2d 1135. Also, a denial of a motion for summary judgment is considered an interlocutory order. See Ross v. City of New Orleans, 96-1853 (La.App. 4 Cir. 9/13/96), 694 So.2d 973.
The proper method to use when seeking review of an interlocutory order is to file an application for supervisory writs. See *918 Fountain v. Waguespack, 93-1077 (La.App. 4 Cir. 7/8/94), 639 So.2d 882; see also Succession of Holliday, 576 So.2d 1155 (La.App. 3 Cir.1991), writ denied, 581 So.2d 708 (La. 1991). Nevertheless, this Court, in the interest of judicial economy, may exercise its supervisory jurisdiction in order to resolve this matter. State v. Hamilton, 96-0807 (La. App. 4 Cir. 6/7/96), 677 So.2d 539; cf. Krueger v. Chehadeh, 563 So.2d 1358 (La. App. 4 Cir.1990).
Normally, a trial court's finding of contempt on the part of the plaintiff and her attorney is also interlocutory and a non-appealable ruling because it does not decide the merits of the case. However, on May 12, 1998, this Court ordered that we convert this matter into an appeal because of the strong allegations of irreparable harm made by the plaintiff and her counsel. Therefore, this Court will treat this matter as an as an ordinary appeal because of our order.

CONTEMPT RULING AS TO MRS. DeGRUY
In this assignment of error, the plaintiff and her attorney of record argue that the trial court committed manifest error in finding them in contempt of court.
Plaintiff argues that she was not given the opportunity to refute the defendant's allegations of contempt, and she was denied due process of law by not being permitted to put on her defense. Moreover, the plaintiff complains that the trial court failed to read into the record its reasons for holding the plaintiffs attorney in contempt of court.
The defendant, on the other hand, argues that the finding of contempt as to both Mrs. DeGruy and Ms. Bridgeman was proper in light of the stipulations on the record by plaintiffs counsel. The defendant also argues that the plaintiffs motion to rescind the special master, which was filed approximately three months from the date she sent her letter to the special master, proves that she was in contempt of court for not complying with the court's order. Furthermore, the defendant argues that there is no merit to Ms. Bridgeman's argument that the judgment of partition prohibited the appointment of a special master. In fact, the defendant argues that the record reflects that the trial court only appointed the special master to this case to determine what items of property were improperly moved from the community home on October 3, 1996. Finally, the defendant argues that the trial court did pronounce sufficient facts into the record as to why it held Ms. Bridgeman in contempt of court on January 29, 1998. Therefore, Mr. DeGruy argues this assignment of error is without merit. We agree.
LSA-C.C.P. art. 224 provides:
A constructive contempt of court is any contempt other than a direct [contempt].
Any one of the following acts constitutes a constructive contempt of court:
(2) Wilful (sic) disobedience of any lawful judgment, order, mandate, writ, or process of the court; (Emphasis ours.)
Ms. Bridgeman made several contemptuous statements on the record regarding the conduct of her client's father during the October 3rd incident, which the trial court imputed to Mrs. DeGruy. Further, the following excerpt from the transcript of the November 4, 1996 hearing reflects how evasive Ms. Bridgeman was during the contempt hearing.
THE COURT:
Wait, we can resolve this easily. I know what we can do, because I'm not going to listen to all of this.
Mrs. Bridgeman, would you stipulate on behalf of your clients whether her father went to that house or not; would you stipulate that he physically went there?
MS. BRIDGEMAN:
Well, my client physically went to the curb to hand the sheriffI will stipulate to this, Your Honor. My client, pursuant to my instruction,wait, I will stipulate to this. The movers called me and said, "We have been waiting here to move furniture and the items and we don't have the community property list yet." And, so, I said, "Well, what I can do is fax it to Mr. Davis and have Mr. Davis drive by, hand it to the movers or the sheriff and leave."
THE COURT:

*919 So, you'll stipulate that he went there against my order?
MS. BRIDGEMAN:
No. He went there pursuant to my instruction.

THE COURT:
No, no, no, against my order?
MS. BRIDGEMAN:
No, your order was that he [not] go into the house, and he did not go into the house.
THE COURT:
But, he did go there?
MS. BRIDGEMAN:
Yes, Your Honor.
(Emphasis ours).
A stipulation amounts to full proof against those who made it and becomes the law of the case and must be enforced. Davis v. Kreutzer, 93-1498, (La.App. 4 Cir. 2/25/94), 633 So.2d 796, writ denied, 94-0733 (La.5/6/94), 637 So.2d 1050. As it relates to the hiring of a private security company, Ms. Bridgeman was not candid with the trial court until she was questioned further. After several irrelevant responses to the trial court's questions, Ms. Bridegman conceded that her client's father did in fact hire a private security company against the trial court's orders. Though Ms. Bridgeman attempted to explain her client's conduct as harmless, the trial court did not find her statements to be credible or relevant. In fact, the trial court critized her clients for abusing the "spirit" of her order, and reprimanded Ms. Bridgeman for supporting their conduct.
To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of [the] court intentionally, knowingly, and purposely, without justification. HCNO Services v. Secure Computing Systems, 96-1693, 96-1753 (La. App. 4 Cir. 4/23/97), 693 So.2d 835, writ denied, 97-1353 (La.9/5/97), 700 So.2d 513. (Emphasis added). In making this determination, the trial court is vested with great discretion. Id. Therefore, we find, in light of the stipulations entered in the record, that the trial court did not err in finding that Mrs. DeGruy was in constructive contempt of court for her actions.

CONTEMPT RULING AS TO MS. BRIDGEMAN
In this assignment of error, Ms. Bridgeman argues at length that she was not afforded an opportunity to defend her client at the contempt hearing. Moreover, Ms. Bridgeman argues that the trial court did not state for the record specific reasons for finding her in direct contempt of court.
The defendant, on the other hand, argues that the record is replete with reasons why Ms. Bridgeman was found in direct contempt of court. More importantly, the defendant contends that, on several occasions, Ms. Bridgeman debated with the trial judge until she was removed from the court by the civil sheriff and placed in a holding cell. Once again, we agree.
LSAC.C.P. art. 222 provides in pertinent part:
A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof service of which appears of record.
Any of the following acts constitutes a direct contempt of court:
(1) Contumacious, insolent, or disorderly behavior toward the judge, or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court, or to impair the dignity or respect for its authority; (Emphasis added).
Direct contempt is committed in the presence of the Court, and constructive contempt is committed outside of the presence of the Court. See State v. Jones, 97-2684 (La.App. 4 Cir. 12/1/97), 703 So.2d 216. However, it is well-settled jurisprudence that district courts have the power to punish for contempts, and this power reaches both conduct before the court, and that beyond the court's confines. Estate of Graham v. Levy, 93-0636, 93-0134, (La.App. 1 Cir. 4/8/94), 636 So.2d 287, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167.
*920 In State v. Woolridge, 95-971 (La.App. 5 Cir. 2/27/96), 670 So.2d 1332, reversible error had not been committed by the trial court when the court sentenced the defendant to an additional six months in prison for each outburst made in court after he was warned not to disrupt the proceeding. Also, in Sears, Roebuck and Co., v. Britton, 539 So.2d 962 (La.App. 2 Cir.1989), the trial court found that absent a showing that the defendant's conduct was disruptive or disrespectful to the court, a defendant could not be held in contempt
The record clearly reflects that Ms. Bridgeman's conduct during the proceeding was disruptive, unruly and discourteous to the presiding judge. Ms. Bridgeman was persistently rude despite a number of warnings from the bench, and she even insinuated to the presiding judge that the previous trial judge had an ulterior motive when the trial court appointed the special master. This type of conduct we find to be unwarranted, and inappropriate for a member of the bar. Ms. Bridgeman's consistent disregard for the authority of the court supports the trial court's ruling. Therefore, we find no error was committed by the trial court in finding Ms. Bridgeman in direct contempt of court.
We also find no merit in Ms. Bridgeman's argument that the trial judge did not articulate its specific reasons for finding her in contempt of court. The record clearly establishes that once the deputy brought Ms. Bridgeman back to the court, the trial judge issued the following admonishment to her:

THE COURT:
As an officer of the court, I'm quite sure you're aware that I expect your behavior to be at a standard[,] which is higher than any other party or non-litigant who comes into this courtroom. Your show and your performance this morning [were] more than disrespectful. Your behavior was horrendous. Your comments were derogatory, not only to this Judge but to the entire Civil District Court Bench. Your demeanor and your attitude were despicable, as I told you earlier and I won't tolerate it from you, and if it happens again I'm not going to be as tolerant as I am being today. You deliberately attempted to impair the dignity of this Court and to be disrespectful.
A[t] this point[,] I'm going to fine you $100.00 and sentence you to 24 hours in Orleans Parish Prison and I will suspend it. And I don't expect that kind of behavior from you again in this Court.
The rule for contempt must set out the alleged contempt correctly, precisely, and explicitly so that the party cited for contempt may know the nature of the charges against him. See LSA-C.C.P. art. 223; HCNO Services, Inc., supra. Additionally, LSA-C.C.P. art. 223 requires the court to issue an order reciting facts constituting the contempt of the person adjudged to be guilty of contempt, and specify the punishment imposed. In the case sub judice, the trial court issued its contempt order on February 6, 1998, but failed to recite the necessary facts surrounding its findings of contempt.
Considering that the trial court adequately stated its reasons for contempt in open court on January 29, 1998, we find that the trial court's failure to recount these facts in its order to be harmless error. In reviewing error[s] on appeal, a reversal is not warranted unless the party alleging error shows that the error, when compared to the record in its totality, had a substantial effect on the out come of [the] case. See Gordon v. Levet, 96-600 (La.App. 5 Cir. 1/15/97), 688 So.2d 57, writ denied, 97-0406 (La.4/4/97), 692 So.2d 418. (Emphasis added).
Neither the record nor the plaintiffs brief indicates that the plaintiff was substantially prejudiced by the trial court's failure to include its reasons in the February 6, 1998 order. The trial court's recitation of facts in open court was sufficient, and such facts did not need to be written in its order or judgment. See Estate of Graham v. Levy, supra.
While a trial court has vast discretion to find a person in contempt of court, pursuant to La.Code Civ.P art. 224(2), there must be a reasonable basis in the record for such a finding.
Gautreau v. Gautreau, 97-612 (La.App. 3 Cir. 10/8/97), 702 So.2d 851. (Emphasis added).
*921 Accordingly, we find no merit in this assignment of error.

DECREE
For the foregoing reasons, we affirm the ruling of the trial court finding the plaintiff, Tina DeGruy, and her attorney of record, Ms. Elizabeth Rue Bridgeman in contempt of court. All costs are assessed to the appellants.
AFFIRMED.
NOTES
[1] The Honorable Terri Love issued the order regarding the partition, and ruled on the first motion for contempt that was filed by the defendant, Gregory DeGruy. However, a copy of this order was not included in the record.
[2] The community property list was the list of property the trial court authorized to be moved by the civil sheriffs.