355 So.2d 1288 (1978)
In re Milton P. MASINTER.
No. 60451.
Supreme Court of Louisiana.
March 6, 1978.
*1289 Milton P. Masinter, in pro. per.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for respondent.
DIXON, Justice.
Milton P. Masinter, a New Orleans attorney, was found guilty of contempt of court during his representation of a defendant in a criminal matter. The trial judge sentenced Masinter to serve twelve hours imprisonment in the Orleans Parish Prison. We granted Masinter's application for certiorari and stayed the imposition of sentence.
Masinter's client was being tried before a jury for carnal knowledge of a juvenile and contributing to the delinquency of a juvenile. The contempt citation occurred during Masinter's cross-examination of the father of the juvenile. We quote extensively from the cross-examination:
"Q Did she spend much time with you prior to her leaving on the 26th or whenever it was? While she was here, did she spend a lot of time with you?
BY MR. LARSEN:
I'm going to object to the relevancy of that question. What difference does that make?
BY THE COURT:
For the present time, I'll sustain the objection until you lay a foundation, sir.
BY MR. MASINTER:
Well, I thought that was what I was doing, Your Honor.
BY THE COURT:
Q Did she come to New Orleans for the purpose of staying with you, sir?
A She came to see us all, her brothers and myself.
Q Did she have plans to stay with you or her brothers?
A She wanted to stay with her brother.
Q All right.
BY MR. MASINTER:
Q Did you and she have an argument?
A No.
BY MR. LARSEN:
Objection.
BY THE COURT:
He's already answered it.
BY MR. MASINTER:
Q To your knowledge, was she afraid of you?
BY MR. LARSEN:
Objection again.
BY THE COURT:
Objection sustained. That's got nothing to do with the crime of carnal knowledge.
BY MR. MASINTER:
Q Did she run away?
BY MR. LARSEN:
Objection.
BY MR. MASINTER:
Q Did you consider her a runaway from your home?
BY THE COURT:
Objection sustained.
*1290 BY MR. MASINTER:
I object. Your Honor, I
BY THE COURT:
I've already ruled, Mr. Masinter.
BY MR. MASINTER:
I've got to ask these questions to get to anything.
BY THE COURT:
I've already ruled.
BY MR. MASINTER:
But, you won't
BY THE COURT:
I'm not going to change, so go ahead.
BY MR. MASINTER:
let me ask any questions.
BY THE COURT:
Let's stick to the issues.
BY MR. MASINTER:
Q Well, you hadn't seen your daughter in three years. You don't know what kind of girl she was, right?
BY MR. LARSEN:
Objection, Your Honor. That's highly improper.
BY THE COURT:
Objection sustained.
BY MR. MASINTER:
Q Well, let me ask you, do you go to church? Maybe that's not objectionable. Let me ask you, do you go to church?
BY MR. LARSEN:
I'm going to object to that. What's the relevancy to that?
BY THE COURT:
Objection sustained. What's the relevancy?
BY MR. MASINTER:
It has absolutely none, Your Honor. I just thought I'd ask it cause everything else nobody seems to want to get to the truth here.
BY THE COURT:
Are you accusing this Court of suppressing the truth, sir?
BY MR. MASINTER:
I may just have to do that later.
BY THE COURT:
I find you guilty of contempt of court.
BY MR. MASINTER:
Then you find me so guilty.
BY THE COURT:
And, I will take care of that later. Now, proceed according to law."
C.Cr.P. 21 provides, in pertinent part:
"A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge; or, a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record; or, a contumacious failure to comply with an order sequestering a witness.
A direct contempt includes, but is not limited to, any of the following acts:
. . . . . .
(5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
. . . . . .
(7) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a motion, plea, brief, or other document, filed with the court, in irrelevant criticism of another attorney or of a judge or officer of the court;
. . ."
Masinter contends that the trial judge erred in finding that his remarks constituted contempt of court. Specifically, he argues that he was not accusing the court of suppressing the truth, but rather that he was referring to the possibility of an appeal to review the rulings of the court.
The power to punish contemptuous conduct is essential to the preservation of the dignity and authority of our courts. See Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); State v. Collins, *1291 237 La. 111, 110 So.2d 545 (1959). This power, however, must be used with great care so as not to obstruct the advancement of causes before the court.
The trial of cases is a difficult and emotional task for both judge and lawyer. The lawyer is obliged to lay before the jury every helpful fact not prohibited by law. The judge is obligated to rule on every objection, to conserve the time of the members of the jury and of the court itself. The lawyer must probe on cross-examination, and the judge must exclude irrelevant questions and cross-examination on collateral matters. The nature of the exercise requires discrimination and restraint. The absence of intelligent self-control, to say the least, creates an atmosphere not conducive to the search for truth.
A lawyer should not suggest in argument in open court that the court is suppressing the truth. To do so would be contemptuous. Even if true, there are other and better forums. Such an accusation in open court would be destructive of the judicial process.
The power to sentence to jail for contempt is awesome to consider, and belongs to the judge because of the need for control of the courtroom and on the assumption that it will be judiciously and sparingly employed. The legislature is required to limit the power. Art. 5, § 2, La.Const. Now maximum penalties are prescribed for lawyers (R.S. 13:4611), whose exposure is greater, but whose training and experience should teach them the gravity of the offense.
In interpreting the legislative definition of direct contempt (C.Cr.P. 21(5)) we cannot say the lawyer's behavior was either contumacious, insolent or disorderly; nor did it tend to interfere with the court's business nor impair its dignity or respect for its authority. Although improper and unwise, the lawyer's response was not contemptuous, principally because it was a response to a question by the judge which seemed to invite and encourage further verbal sparring.
Relator's conviction for contempt is reversed, his sentence is vacated, and he is ordered discharged.