LEMMON, Justice.
We granted certiorari to review the judgment of the juvenile court finding Rita Harris, an employee of the Department of Health and Human Resources (DHHR), guilty of constructive contempt of court for willful disobedience of a court order to have a minor child evaluated by a psychiatrist. We now reverse, concluding that the evidence was insufficient to establish that Harris’ conduct constituted willful disobedience which is an essential element of the crime of criminal contempt.
The basic litigation arose as a child in need of care (CINC) case. Custody of the child was granted to DHHR in 1983, after the child’s father had been shot to death by the stepfather and the child’s mother and stepfather had been arrested on drug charges.[1] CINC review hearings were held periodically thereafter.
In May, 1985, Harris was assigned to the case by DHHR as the foster care worker. On June 11, 1985, a juvenile judge ad hoc conducted a CINC review hearing. The transcript of the hearing is not in the record, but the form minute entry-judgment reveals that the only witness was the Department’s representative, Judy Knup-ple, and the only other persons present *1201 were the child’s attorney, the parents’ attorney, and the district attorney. The minute entry further indicates that the judge maintained the legal custody in the DHHR, the physical custody in the foster parent, and the supervisory provisions in the DHHR. The minute entry form also contains the following notations:
[[Image here]]
According to the minute entry, the next hearing was set for August 20 as a rule to show cause why the child had not been evaluated. The form also indicated that all parties were notified in court.
On September 10, 1985, the juvenile judge conducted a hearing on a rule to show cause why the child had not been evaluated by a psychiatrist.[2] Harris testified that she received a note from Knupple on June 17 concerning the June 11 order.[3] Since a psychiatric examination had already been performed on April 29, Harris called the psychiatrist on June 20 and requested a report of the examination. The doctor informed her that the child’s mother had to be evaluated in order to complete the report with the necessary recommendations. Harris attempted to arrange the interview, but the mother refused because she had previously gone to the doctor’s office for an evaluation and waited for a long time before being told to come back later. Harris asked the doctor for a report without the mother’s interview, but the doctor refused. Harris therefore waited for the mother to “cool down” and sent the child for psychological testing on June 26. By August 5, Harris became convinced that the mother would not return for an evaluation and the doctor would not issue a report without interviewing the mother. After consultation with her supervisor, Dave Pace, she scheduled an appointment with a different psychiatrist for September 5. Although this appointment was after the August 20 return date fixed in the June 11 minute entry order, the report of the new psychiatrist’s September 5 examination was available at the September 10 hearing.
After the testimony at the September 10 hearing by Harris and her supervisor (who remembered virtually none of the specific details of his discussions with Harris about the case and did not recall a court order for a psychiatric evaluation), the attorney for the child argued that Harris should be held in contempt because DHHR had consistently failed to respond in the past to pleas by court personnel to carry out court-ordered evaluations. There was no evidence or argument that Harris had been responsible for prior failures or had been advised of such failures.
The juvenile judge noted that there had been a delay of five or six months in evaluation and treatment of a child badly in need *1202 of psychiatric help.[4] Pointing out that Harris had admitted receiving notice of the order and of the return date through the DHHR representative present at the June 11 hearing, and that Harris had conceded she was the DHHR employee who was responsible for obtaining the evaluation, the judge found that Harris was “guilty of constructive contempt of court for willful disobedience of the direct Order of this Court issued June 11, 1985, and specifically for failing to have the minor child, David, evaluated by a psychiatrist, failing to submit a copy of said evaluation to the Court, and failing to begin any indicated treatment, all of which was ordered on June 11, 1985”.[5] Harris was sentenced to serve five twelve-hour days in jail, beginning the next day.[6]
The judge then proceeded to review the evaluation submitted the previous day by the psychiatrist. All parties were apparently dissatisfied with the recommendations, and the judge ordered an evaluation by another psychiatrist recommended by the child’s attorney. The judge expressly ordered DHHR Supervisor Pace on the record to be responsible for obtaining the evaluation by October 15.
On Harris’ application, the court of appeal agreed to review the contempt conviction and sentence, but affirmed in an unpublished opinion. This court then granted certiorari. 486 So.2d 744.
The record, as pointed out in footnote 3, reveals many procedural shortcomings for a matter which resulted in a jail sentence for a person who was not a party to the litigation. However, because reversal of the conviction is warranted by the insufficiency of the evidence of willful disobedience of the order, it is not necessary to address any procedural deficiencies in the contempt proceeding.
This is a criminal contempt proceeding, since the object was to punish a person for disobeying an order issued by the court.[7] State v. Austin, 374 So.2d 1252 (La.1979); W. LeFave & A. Scott, Criminal Law § 7 (1972); R. Perkins, Criminal Law 532 (1969). Criminal contempt is a crime. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal proceeding against conviction of a crime “except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged”. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). On appellate review of a criminal conviction, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the crime of which the defendant was convicted was proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
La.C.Cr.P.Art. 23(2) provides:
“A constructive contempt of court is any contempt other than a direct one.
“A constructive contempt includes, but is not limited to any of the following acts:
[[Image here]]
*1203 “(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of court.”
Thus, an appellate court reviewing this conviction of criminal contempt under Article 23(2) must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant willfully disobeyed a lawful order of the court.[8] See New Orleans Fire Fighters Association Local 632 v. City of New Orleans, 260 So.2d 779 (La.App. 4th Cir.1972), aff'd. 263 La. 649, 269 So.2d 194 (La.1972), cert. denied, 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 392 (1973). After reviewing this record, we conclude that the evidence of willful disobedience was insufficient.
Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. The purpose of charging and convicting a defendant for criminal contempt is vindication of the public interest by punishment of contemptuous conduct. R. Perkins, supra at 533. Therefore, in order to constitute willful disobedience necessary for criminal contempt, the act or refusal to act must be done with an intent to defy the authority of the court. E. Dangel, Contempt § 171 (1939).
A rational trier of fact could not reasonably have concluded from this record that Harris willfully refused to obey or consciously intended to defy the court order. The order, which was contained in a form minute entry, simply instructed a governmental agency whose function was to provide social services to the court to provide specified services in this case. When Harris was notified of the order, she did not simply disregard it. She attempted compliance by ascertaining that a psychiatric examination had been conducted and by attempting to obtain a report of the evaluation. Production of the report was not solely within her power. Perhaps she did not exercise proper diligence when she failed to inform the court promptly of the problem, or to obtain judicial assistance in securing a report of the evaluation, or to act earlier in scheduling an evaluation by another psychiatrist. And perhaps her substandard performance in carrying out the order timely warranted departmental discipline by reprimand, job suspension or termination. But a rational trier of fact could not have reasonably concluded that this lower level agency employee willfully refused to obey the court order or deliberately defied the authority of the court by her failure to comply timely. This insufficiency requires reversal of the conviction of criminal contempt.[9]
Accordingly, the conviction of contempt and the sentence are reversed, and relator is discharged.

. Both the child’s mother and stepfather were subsequently incarcerated, and the child was placed in foster care.

. The September 10 hearing was scheduled after the August 20 hearing on the rule was continued because Harris was not present.

. Among other possible procedural deficiencies, Harris was called to the stand as part of the prosecutor’s case in chief, apparently without being notified that she was being tried for contempt or advised that she could not be compelled to testify against herself. The notice to Harris of the September 10 hearing (served on a DHHR secretary) ordered her only to "show cause why psychiatric evaluations were not done”.

. Actually the delay in the trial judge’s review of the psychiatric evaluation (the point at which specific treatment is generally ordered) was only twenty-one days (from August 20 to September 10).

. This was the first place in the record that contempt was mentioned. Nothing in the rule to show cause indicated that the hearing was one for contempt of court.

. After Harris had served almost two days, her attorney filed a notice of intention to apply for supervisory writs, and the juvenile judge stayed further execution of the sentence pending action by the appellate court.

. If the aim of the court is to force the person into compliance with the order, the contempt is civil. See United States v. Schillitani, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Here, since the evaluation which was the subject of the court order had already been obtained when Harris was sentenced to jail, the contempt was clearly criminal.

. The court actually proceeded under C.J.P. Art. 20, which requires that contempt proceedings in juvenile cases be conducted in accordance with La.C.C.P. Art. 221-27. Nevertheless, the language in La.C.Cr.P. Art. 23(2) is virtually the same as that in La.C.C.P. Art. 224(2). The significant procedural consideration in this case is that a contempt proceeding for the purpose of punishment is a criminal proceeding.

. It is indeed a sad commentary when a juvenile judge must resort to his contempt powers to obtain services by a governmental agency which was created to perform those services, whether the apparently longstanding problem resulted from severe understaffing or from significantly undersensitive personnel. Nevertheless, when such problems arise, an order whose violation is intended to be punished by contempt proceedings should reasonably alert the ordered party that such proceedings may result in the event of noncompliance. Indeed, the juvenile judge in this very case, in ordering a second evaluation on September 10, directed a specific order to an identified person that he would be held responsible if a second evaluation was not obtained by a specified date.