803 So.2d 372 (2001)
Mark Ramon SWAN, Plaintiff-Appellee,
v.
Susan Melissa Smart SWAN, Defendant-Appellant.
No. 35,393-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 2001.
*373 Daye, Bowie & Beresko by Alfred R. Beresko, Shreveport, Counsel for Appellant.
Weems, Schimpf, Hayter, Gilsoul & Carmouche by Kenneth P. Haines, Shreveport, Joel L. Pearce, Shreveport, Counsel for Appellee.
Before NORRIS, GASKINS and DREW, JJ.
DREW, J.
Susan Swan appeals a judgment finding her guilty of contempt for violating a prior judgment governing her present husband's contact with her child from a previous marriage. Concluding that the evidence presented did not establish beyond a reasonable doubt that Susan Swan willfully disobeyed the visitation judgment, we reverse.

FACTS
Mark Swan and Susan Swan were married on November 14, 1989. One child, a son named A.S. with a date of birth of September 26, 1991, was born of the marriage. During the course of the marriage, Susan Swan engaged in an affair with Christopher Gutierrez. On May 1, 1996, Mark Swan filed a petition for a La. C.C. 103(2) divorce. With the divorce and incidental matters pending, A.S.'s parents shared custody of him pursuant to an interim order, with each parent having custody on alternating weeks. Judgment of divorce was granted on December 12, 1996.
In a consent judgment rendered on April 11, 1997, Mark Swan and Susan Swan were given joint custody of their son with each named a co-domiciliary parent pursuant to a Joint Custody Implementation *374 Plan which provided, in part, that Mark Swan and Susan Swan would share physical custody of A.S. on alternating weeks. After Susan Swan married Gutierrez in October 1997, Mark Swan attempted to modify the custody agreement to grant him sole custody or in the alternative grant him domiciliary custody. In his rule to modify custody, Mark Swan made allegations of numerous instances of inappropriate sexual behavior exhibited by Gutierrez. Mark Swan requested in his rule that any visitation between A.S. and his mother when Gutierrez was present be subject to supervision by a third party either approved by the parties or appointed by the trial court. Susan Swan responded by filing her own rule to modify the custody agreement. Following a hearing in late October 1999 at which both parties were present and oral reasons were assigned, the trial court rendered judgment on November 19, 1999 ordering an amendment to the judgment of custody and the Joint Custody Implementation Plan to "reflect that the minor child, [A.S.], shall not be left alone in the presence of Christopher Gutierrez for a period in excess of thirty (30) minutes." In January, 2001, Mark Swan filed a rule for contempt alleging that Susan Swan had violated this judgment by leaving A.S. in Gutierrez's care without adult supervision for a period in excess of 30 minutes on November 20, 2000. It is undisputed that A.S. had been left on that date with Gutierrez and his 13 year-old son and 11 year-old daughter.
The contempt hearing was held in February 2001. An attorney was appointed by the trial court to represent Susan Swan, who was ultimately found in contempt of court. The trial court rendered judgment decreeing that Susan Swan was in contempt of court for "leaving the minor child, [A.S.], alone with Christopher Gutierrez for more than 30 minutes." Susan Swan received a sentence of 30 days in jail, which was suspended on the condition that she pay a fine of $350 to the court reporters' fund. She was also ordered to pay court costs of $150. Susan Swan now appeals this judgment.

DISCUSSION
Before reviewing the trial court's judgment, we must first address the threshold issue of whether Susan Swan was subject to a civil or criminal contempt proceeding in order to determine the appropriate standard of review. In a criminal contempt proceeding, the object is to punish a person for disobeying an order issued by the court. State in Interest of R.J.S., 493 So.2d 1199 (La.1986). The punishment is punitive and intended to vindicate the court's authority. Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). In a civil contempt proceeding, the aim of the court is to force the person into compliance with the order. State in Interest of R.J.S., supra. The punishment is remedial and intended for the benefit of the complainant. Feiock, supra; Gompers, supra.
A sentence of imprisonment is considered remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order. It is considered punitive if the sentence is limited to imprisonment for a definite period. A fine is remedial when it is paid to the complainant. A fine is considered punitive when it is paid to the court, although such a fine is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. Feiock, supra; Gompers, supra.
*375 A contempt proceeding ancillary to a civil proceeding assumes the quality of a criminal or quasi-criminal proceeding only after a criminal sentence is imposed. Fontana v. Fontana, 426 So.2d 351 (La. App. 2d Cir.1983), writ denied, 433 So.2d 150 (La.1983). When a determinate sentence is rendered without setting conditions for the contemnor to avoid the sentence imposed or purge himself of it, the punishment is criminal in nature and cannot be imposed unless federal constitutional protections are applied in the contempt proceeding. Feiock, supra.
That the trial court apparently treated the proceeding at issue as a criminal contempt proceeding by appointing counsel for Susan Swan is a factor for consideration, but it is not dispositive of this issue. Compare Davis v. Harmony House, 35,080 (La.App.2d Cir.10/31/00), 800 So.2d 92, where the trial court announced the contempt hearing against an attorney was a "criminal proceeding" and that the attorney had the right to counsel and the right against self-incrimination. Nonetheless, this court held that the proceeding was civil in nature because completion of a six month probation period purged the attorney of his suspended jail sentence.
Susan Swan received a determinate sentence, albeit a suspended determinate sentence. It is of no consequence that the sentence was suspended in this case, as the Feiock court stated in footnote 11:
That a determinate sentence is suspended and the contemnor put on probation does not make the remedy civil in nature, for a suspended sentence, without more, remains a determinate sentence[.]

Feiock, 108 S.Ct. at 1434.
In addition, Susan Swan was ordered to pay a fine without any conditions allowing her to avoid paying it.
We note that during the contempt hearing, the trial court told Susan Swan that she would return to court the next month for a determination of whether she had paid the fine and "purged" herself of the contempt. As noted earlier, the jail sentence was suspended on the condition that she paid the fine. Nevertheless, this is not a purge within the meaning of Feiock as the trial court was simply allowing her to choose her punishment: a fine or jail time. Susan Swan could not escape both by avoiding further contempt within a specified period. Thus, Susan Swan was not "purging" herself of the sentence by complying with the terms of the original order. As such, this contempt proceeding was clearly criminal in nature.
An appellate court reviewing a conviction of criminal contempt must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant willfully disobeyed a lawful order of the court. State in Interest of R.J.S., supra.
Contempt of court is either direct or constructive. La. C.C.P. art. 221. Contempt of court is direct when it is committed in the immediate view and presence of the court and of which it has personal knowledge. La. C.C.P. art. 222. Constructive contempt of court is any contempt other than direct contempt. La. C.C.P. art. 224.
Constructive contempt includes the "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]" La. C.C.P. art. 224(2). Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. State in Interest of R.J.S., supra.
*376 Based on the record before us, we cannot say that the evidence presented was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Susan Swan willfully disobeyed a lawful order of the court. In fact, Susan Swan complied with the literal terms of the judgment in that she did not leave her son alone with her husband as her 13 year-old stepson and 11 year-old step-daughter were also present.
What was meant by the term "alone" was the subject of a dispute between the parties' attorneys at the hearing on the form and content of the judgment, at which Susan Swan was not present. After Mark Swan's attorney expressed reservations about the judgment's language, apparently giving the example of a nine year-old providing supervision, the trial court responded:
That is not supervision with the children. The deal is adults are in the household. That's what is intended with the rule.... His judgment does not say that it would allow that. Bottom line is the man is not to be left alone. Now, we have all times in this Court. What does that mean? Leaving with a five-year-old, six-year-old, nine-year-old kid is still being left alone.
It would have been simpler for the trial court, if it intended for "left alone" to mean for A.S. not to be left with Gutierrez without another adult present, to have simply required that language in the judgment. Susan Swan cannot be held to a standard of conforming her conduct to what the trial court meant by the term "alone", especially considering that she was not even present when the attorneys argued over the form of the judgment and testified she had no knowledge about what was discussed at that hearing.
At appellee's cost, we reverse the judgment decreeing Susan Swan to be in contempt of court.

DECREE
At appellee's cost, the judgment is REVERSED.