h GASKINS, J.
The applicant, S. Lynn Walker, counsel for defendant, Terry Michael Meek, seeks review of a trial court judgment finding her to be in direct contempt of court and sentencing her to 24 hours in jail and a fine of $100, both of which were suspended. In addition, the court placed Ms. Walker on unsupervised probation for a period of six months. For the reasons set forth below, we reverse the trial court’s judgment.
FACTS
On April 9, 2002, Ms. Walker was representing the defendant in a domestic case. Upon questioning by the opposing attorney, it became apparent that the defendant did not have some financial information. The court engaged counsel in a discussion of how to proceed:
THE COURT: So the problem is, you either want me to exclude all the documents or give you an opportunity to get the documents; which one do you want?
MS. WALKER: Are we now bifurcating the suit record and are we going to pick and choose what’s introduced into evidence?
THE COURT: No. You are trying to pick and choose, Ms. Walker, because we are dealing with Mr. Meek telling the Court he does not have the information right here in his hand where he can get it and he needs some time to get it, that’s all. I am trying to accommodate Mr. Meek. You are the one that is raising other issues that I am trying to figure out. Are you saying that we don’t need the information? It’s unfair for me to give your client an opportunity to go find the information or Mr. Miciotto [opposing counsel] has not given you the information and you don’t want the information or you want — what are you saying?
LMS. WALKER: I think he [Mr. Mi-ciotto] should do his discovery timely, Judge.
THE COURT: So again, you have not answered my question. What are we going to do about Mr. Meek?
MS. WALKER: You’re the one that wears the black robe, Judge. That’s your call.
THE COURT: O.K. And that comment will cost you one. Excuse me.
The next day, the trial court clarified that Ms. Walker was found in direct contempt of court under La. C.C.P. art. 222. The court stated that Ms. Walker’s comment tended to interfere with the business of the court or impair the court’s dignity, *1193 and showed disrespect for the court’s authority. The court sentenced her to serve 24 hours in jail and to pay a fine of $100. The penalty was suspended and Ms. Walker was placed on six months unsupervised probation.
In written reasons for the contempt judgment, the trial court described the behavior constituting contempt as follows:
I found that Ms. Walker’s acts, comments, and overall discourteous behavior interrupted and interfered with the business of the court and impaired the court’s dignity while showing an absolute disrespect for the court’s authority. These contemptuous acts committed by Ms. Walker are the essence of a direct contempt as defined by the statute. Louisiana Code of Civil Procedure article 222 defines a direct contempt as one which is committed in the immediate view and presence of the court and of which the court has personal knowledge. I specifically found that Ms. Walker violated Subsection 3 of Article 222, by stating “you’re the one that wears the black robe judge that’s your call.” Subsection 3 of Article 222 provides: (3) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a pleading, brief, or other document filed with the court in irrelevant criticism of another attorney.
|3My continuous attempts throughout the proceedings to cease Ms. Walker’s numerous interruptions of the court and blatant disrespect were to no avail. After an objection made by Ms. Walker was overruled, she continued to interrupt the court and repeatedly read a statute after being told to sit down. I said a number of times ... “Ms. Walker, Ms. Walker please don’t interrupt me.” I also advised Ms. Walker that she was an officer of the court and that she should abide by the rules set forth by conducting herself in a courteous and polite manner. Prior to my citing of Ms. Walker, I stated: “The court will admonish you the next time you interrupt me from going through this report that we will probably have to deal with some things. Please do not interrupt me. Now we are trying to get on down the road here now.” This further illustrates my patience in continuously warning Ms. Walker of her unprofessional behavior and advising her on the proper manner to conduct herself.
Ms. Walker filed a writ in this court, seeking supervisory review of the trial court judgment holding her in contempt. On June 7, 2002, this court granted Ms. Walker’s writ application, ordering the trial court to assign written reasons for its ruling, and ordering the transcript, record and audio tapes of the proceedings on April 9, 2002. Ms. Walker argues that the trial court failed to recite the facts constituting the contempt. She also argues that the trial court erred in finding that her conduct rose to the level of contempt of court. We find that the trial court did adequately articulate the reasons for its judgment. However, we also find that the trial court erred in finding Ms. Walker to be in contempt of court.
DISCUSSION
There are two kinds of contempt of court, direct and constructive. La. C.C.P. art. 221. A direct contempt is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of |4service of which appears of record. La. C.C.P. art. 222. There are six acts listed in La. C.C.P. art. 222 that constitute a direct contempt of court; however, only two potentially apply in this case. Direct contempt of court occurs when there is “[e]ontumacious, insolent, or disorderly be *1194 havior toward the judge ... tending to interrupt or interfere with the business of the court, or to impair its dignity or respect for its authority.” It may also include the “[u]se of insulting, abusive, or discourteous language by an attorney ... in irrelevant criticism of ... a judge or officer of the court.”
Under La. C.C.P. art. 223, a person who has committed a direct contempt of court may be found guilty and punished by the court without any trial other than an opportunity to be heard orally by way of defense or mitigation. The procedural safeguards, including the right to a hearing and the right to counsel, do not attach to direct contempt, because all of the facts constituting a direct contempt are within the knowledge of the court. Davis v. Harmony House Nursing Home, 35,080 (La.App.2d Cir.10/31/01), 800 So.2d 92, writ denied, 2001-3162 (La.2/22/02), 810 So.2d 1143.
Proceedings for contempt must be strictly construed, and the law does not favor extending their scope. Furthermore, contempt proceedings are designed for the vindication of the dignity of the court rather than for the benefit of the litigant. Davis v. Harmony House Nursing Home, supra.
While a contempt proceeding ancillary to a civil action may assume the quality of a criminal proceeding after a criminal sentence is imposed, the trial court is not required to impose criminal punishment in the form of a determinate sentence, without conditions or a purge clause, and may do so Lonly if constitutional protections were afforded the defendant throughout the proceeding. Davis v. Harmony House Nursing Home, supra.
In a civil contempt, the stringent criminal burden of proof and standard for appellate review do not apply. The burden of proof for civil contempt is by a preponderance of the evidence and appellate review is by the manifestly erroneous standard. Davis v. Harmony House Nursing Home, supra. Ms. Walker was held in civil contempt because the trial court’s sentence of incarceration in this case is conditional. The successful completion of the six-month probation period would effectively purge her of the jail sentence. Therefore, the contempt proceedings were civil in nature and Ms. Walker was not entitled to the protections due a criminal offender. See Davis v. Harmony House Nursing Home, supra.
Based upon the record before us, and compared with other contempt cases, we find that Ms. Walker’s actions did not rise to the level of direct contempt. In Sears, Roebuck and Co. v. Britton, 539 So.2d 962 (La.App. 2d Cir.1989), the court declined to find a pro se litigant in direct contempt where he continued argument after the judge granted summary judgment against him, and yelled during some unspecified stage of the argument. The court concluded that the litigant’s brief remarks, even if made loudly, did not rise to the level of contempt under La. C.C.P. art. 222. Instead, the court noted that, while the litigant’s continued argument about the burden of proof after the court had granted summary judgment may have exasperated the court, the record did not show that the litigant intended by that conduct to defy the court’s authority.
|fiUnder the facts of In re Milkovich, 493 So.2d 1186 (La.1986), an attorney’s repetitious legal argument during his opening statement in a criminal trial, after the court had ordered him not to argue the case at that stage of the trial and had sustained four objections to his argument, was found insufficient to support a contempt conviction. The evidence was legally insufficient to show that the attorney *1195 intended his conduct to defy the court’s authority.[1]
In the case of In re Masinter, 355 So.2d 1288 (La.1978), the offending attorney stated at one point that “nobody seems to want to get to the truth here,” and when later asked by the court if he was accusing the court of suppressing the truth, the attorney stated, “I may just have to do that later.” The Louisiana Supreme Court found these statements to be both improper and unwise, but not contemptuous under the circumstances.
In the instant case, we have reviewed not only the transcripts of the hearings relative to the finding of contempt, but also the audio tapes of the hearing at which Ms. Walker was found in contempt. With respect to the judge’s references to Ms. Walker’s “acts, comments, and overall discourteous behavior” that the court felt “interrupted and interfered with the business of the court and impaired the court’s dignity while showing an absolute disrespect for the court’s authority,” we find that Ms. Walker’s conduct, while obviously exasperating to the court, was not contumacious or disorderly, and was not intended to insult the court. To the contrary, the |7record shows that while Ms. Walker did raise her voice and use an argumentative tone of voice, her behavior simply did not rise to the level of contempt under La. C.C.P. art. 222.
As stated in In re Masinter, supra:
The trial of cases is a difficult and emotional task for both the judge and lawyer.... The nature of the exercise requires discrimination and restraint. The absence of intelligent self-control, to say the least, creates an atmosphere not conducive to the search for truth.
At the same time, the Masinter court stated:
The power to sentence to jail for contempt is awesome to consider, and belongs to the judge because of the need for control of the courtroom and on the assumption that it will be judiciously and sparingly employed.
In the case at bar, although the court suspended the punishment imposed for direct contempt, Ms. Walker nevertheless was sentenced to 24 hours in jail, as well as a fine of $100. The court also informed Ms. Walker at the end of the hearing that if the contempt was not overturned by a “competent superior court” it could serve as the basis for a much stiffer penalty if she committed the offense before the court again.
We conclude that Ms. Walker’s statement in response to the court’s repeated questioning as to what action the court should take was both improper and unwise, but not contemptuous. While the court obviously took offense to Ms. Walker’s statement, we cannot conclude from our review of the record and the audio tapes that this somewhat flippant response was intended to insult the court, or that it tended to impair the court’s dignity or respect for the court’s authority. Simply put, while the remark was improper, it did not warrant a jail sentence or fine. Nor can we j ¡¡approve the punishment on a theory of the “cumulative effect” of Ms. Walker’s behavior. We also note that the only warning given concerned interruption of the judge, not making discourteous remarks to the judge.
When given an opportunity to address her behavior, Ms. Walker stated:
*1196 I am an aggressive advocate for my clients, and I apologize if that offends the Court. My comment to you that you found offensive yesterday, I believe it is simply an honest statement and no contempt was intended. But if you find it offensive or contemptuous, I do apologize.
CONCLUSION
For the reasons set forth above, we conclude that Ms. Walker’s behavior, while aggressive and at times somewhat less than professional, and her remark that the judge found offensive, although unwise, did not rise to the level of a direct contempt of court. Even though we recognize that the power to punish for contempt is necessary and that the trial court has some measure of discretion in such matters, we conclude that the finding of direct contempt and the punishment of fine and imprisonment imposed were unwarranted in this case. Accordingly, Ms. Walker’s conviction for contempt is reversed, and her sentence is vacated.
REVERSED.

. However, the attorney’s actions during closing argument in accusing the prosecution of concealing the truth, hollering, ranting, screaming, and pounding exhibits, in violation of the court's repeated admonitions, was found to be contemptuous.