Judgment rendered September 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,833-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA
IN THE INTEREST OF
J.K., JR. (IN RE: ROSS SHACKLETTE CONTEMPT PROCEEDINGS)

* * * * *

Appealed from the
Caddo Parish Juvenile Court
Parish of Caddo, Louisiana
Trial Court No. 168933-J

Honorable Ree Casey-Jones, Judge

* * * * *

| | |
|---|---|
| PLAISANCE LAW, LLC<br>By: Mark David Plaisance | Counsel for Appellant,<br>Ross Shacklette |
| INDIGENT DEFENDER BOARD<br>By: Michelle Monique AndrePont | |
| STATE PUBLIC DEFENDER<br>By: Remy Starns | |
| JAMES E. STEWART, SR.<br>District Attorney | Counsel for Appellee,<br>State of Louisiana |
| ASHLIN NICOLE THOMAS<br>Assistant District Attorney | |

* * * * *

Before THOMPSON, ROBINSON, and ELLENDER, JJ.

**ROBINSON, J.**

Ross Shacklette ("Shacklette") appeals a judgment rendered by the Caddo Parish Juvenile Court finding him in contempt of court on October 30, 2023, and ordering him to spend 24 hours in jail. Shacklette filed an application for supervisory review on November 14, 2023. This court ruled the order constituted a final judgment, remanded the application to the juvenile court, and ordered the supervisory writ application be converted to a devolutive appeal.

For the following reasons, the trial court's judgment finding Shacklette in contempt is REVERSED, and his sentence is VACATED.

## FACTS AND PROCEDURAL HISTORY

Shacklette is a public defender representing a minor in connection with the charges of illegal possession of stolen things and principal to theft of a motor vehicle. During the trial on the matter held on October 24, 2023, Shacklette made numerous hearsay objections regarding the admission of testimony regarding a police report. The court allowed the report, citing the business record exception. Shacklette also objected to the admission of a video and body cam footage on the grounds that it was not a record of the police department or a part of the police report. Following the trial judge's overruling a hearsay objection by Shacklette regarding the police report and reading the applicable code article and comments, La. R.S. 15:574.7, Shacklette noted his objection and commented:

> Because frankly your ruling emasculates the need for a trial because all they have to do is prepare a police report and say that's the report they prepared … I'm arguing for the Court of Appeals, Your Honor.

The judge expressed frustration at the numerous objections and Shacklette's statements, responding as follows:

> Now, you have the right to do whatever you need to do as far as a stay on these proceedings or whatever. But what we're not going to do is allow you to continue to object to something I've already ruled on. We're not going to do that.
>
> Let me finish. Let me finish. I'm not going to continue to let you do that. You have a few minutes. Five o'clock and I'm ending this for the day and we're going to continue it for another day.
>
> I'm not going to continue to go back and forth on this and you're not going to continue to be disrespectful to this Court. There are ways in which you do things, and that's not handled properly right now. So if you want to stay of [*sic*] the proceedings, then you request that accordingly. But we're not going to continue to go back and forth. We're here all day unnecessarily at a case that probably should have taken me probably an hour to listen to, okay.
>
> I've heard your objection. Overruled. Okay? Please don't make the same objection again.

The court adjourned the matter since it was approximately 5:00 p.m. and continued it for October 30, 2023.

At the October 30 hearing, the minor was sentenced following admission to an agreed-upon offense. After dismissing the defendant and his mother, the court required Shacklette and other court personnel to remain in the courtroom. At that time, the court held that Shacklette was in direct contempt based on his actions at the October 24 trial. The following interaction took place between the trial court judge and Shacklette:

> THE COURT:…Last week we had some issues in this courtroom during this trial when there was a great level of disrespect for this Court by Mr. Shacklette. Last week I had to actually think about this because I wanted to make sure that I was making a decision that was not rash for something that was in the interest of justice and nothing that could be construed as me trying to be vindictive or doing something that was going against this child. Because my main focus is to make sure every child and every family that

2

comes in this courtroom is taken care of. But disrespect is something I will not tolerate.

Mr. Shacklette, you were very disrespectful to this Court. You insulted this Court by calling it a name. I don't know where you practice law on a regular basis, but that's not how I do things, okay?

I've never been disrespectful towards anyone in this courtroom. Now, I will state my opinion, I will speak my mind, but I am very respectful of everyone and their opinion in this courtroom.

And based on your actions last week, I am holding you in direct contempt of court. I will fine you $100 --

SHACKLETTE: Which I will not pay.

THE COURT: Okay. Well, in that case I will order you serve 24 hours in the parish jail.

Madam Bailiff. Thank you.

SHACKLETTE: Your Honor, I ask it be held in abeyance so that I can --

THE COURT: Sir, I was trying to give you a fine. You're still disrespectful. You will serve 24 hours in the parish jail for direct contempt of court. Thank you. Court is adjourned. You all have a great day.

SHACKLETTE: By the way I will note Your Honor's decision is wrong. And I continue to insist that it was wrong, and that I am --

THE COURT: Mr. Shacklette, I'm going to ask that you be quiet. The next step is going to be a complaint to the Bar Association.

SHACKLETTE: Your Honor, you are not entitled to hold me in contempt without giving me a chance to have a hearing with counsel present.

[End of proceedings.]

The court described Shacklette's actions of both October 24 and 30 in its October 30 contempt order. It noted that on October 24, Shacklette "continued to object and insulted the court by stating that the court's 'ruling emasculates the need for a trial' [and Shacklette] went on further to state that

3

he would argue with the 2nd Circuit Court of Appeals." The court also elaborated on the interaction that took place on October 30:

> Mr. Shacklette slammed his hand on the desk he was near and yelled that he would not pay [the fine]. He slammed his hand so hard, the microphones shook and I jumped as well as several other staff members. Mr. Shacklette was so out rate [sic] that the Sheriff Deputies (bailiffs) immediately charged towards him and I ordered him into the Parish Jail for 24 hours to calm the situation. The Court felt threatened by Mr. Shacklette's actions.
>
> Mr. Shacklette continued to yell at the Court and was forcefully removed from the courtroom by bailiffs as those they were trying to gain control of him.

Per the October 30 contempt order, the court found Shacklette in direct contempt "for his breach of the peace, boisterous conduct and violent disturbance that interrupted and interfered with the business of the court" and because he "impaired the dignity and respect for the Court's authority" and his "language and tone was insulting and discourteous." It explained that it was not given an opportunity to set a contempt hearing so that Shacklette could defend his actions because it had been placed in a position to regain control of the courtroom, resulting in Shacklette's removal, but noted that it did not object to setting the matter for a contempt hearing.

A contempt hearing was held on December 4, 2023 – after Shacklette had served his jail time. Shacklette was represented by counsel, but elected not to participate in the hearing since the contempt decision had already been made and the sentence imposed and served. The court admitted into evidence audio recordings and transcripts for the October 24 and 30 hearings. An off-the-record discussion was had and the hearing concluded. The transcripts from all hearings were made part of the appellate record, but no audio recordings were included.

4

**DISCUSSION**

There are essentially two instances of contempt in this case, though it appears that the trial court consolidated the two in its October 30 judgment. The first contempt was for Shacklette's actions during the October 24 trial, in which the court found that Shacklette had been "very disrespectful to this Court," noting that he "insulted this Court by calling it a name." The court referred to Shacklette's continuous objections, his statement that the court's evidentiary ruling admitting testimony regarding the police report "emasculates the need for a trial because all they have to do is prepare a police report and say that's the report they prepared," and his comment that he was arguing for the appellate court.

The second instance of contempt was during the October 30 hearing following the court's statement to Shacklette that he was being held in contempt for his actions on October 24. When Shacklette was informed that he was being fined $100, he stated that he would not pay, prompting the trial court judge to impose a 24-hour jail sentence. Although it is not apparent from the transcript, and no audio recordings are in the record, the court alleges that Shacklette was irate, yelling, and slammed his hand on the desk, to the point that the court felt threatened, enough to warrant his forceful removal by the bailiffs in order to gain control of the situation. Shacklette asked that the sentence be held in abeyance, urged that the court's decision was wrong, and stated that the court was not entitled to hold him in contempt without a hearing with counsel present; nevertheless, according to his statement, he was "booked into Caddo Parish Jail, strip searched, deloused, and placed into a jail uniform … [, and] photographed and issued state and federal criminal ID numbers."

La. C.C.P. art. 222 provides the definition of "direct contempt," the applicable portions as follows:

> A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge...
>
> Any of the following acts constitutes a direct contempt of court:
>
> (1) Contumacious, insolent, or disorderly behavior toward the judge, or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court, or to impair its dignity or respect for its authority;
>
> (2) Breach of the peace, boisterous conduct, or violent disturbance tending to interrupt or interfere with the business of the court, or to impair its dignity or respect for its authority;
>
> (3) Use of insulting, abusive, or discourteous language by an attorney or other person in open court…in irrelevant criticism of another attorney or of a judge or officer of the court.

La. C.C.P. art. 223 sets forth the procedure for punishing direct contempt:

> A person who has committed a direct contempt of court may be found guilty and punished therefor by the court forthwith, *without any trial other than affording him an opportunity to be heard orally by way of defense or mitigation*. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed. [*Emphasis added*.]

The procedural safeguards, including the right to a hearing and the right to counsel, do not attach to direct contempt, because all of the facts constituting a direct contempt are within the knowledge of the court. *Meek v. Meek*, 36,467 (La. App. 2 Cir. 9/18/02), 827 So. 2d 1191; *Davis v. Harmony House Nursing Home*, 35,080 (La. App. 2 Cir. 10/31/01), 800 So. 2d 92, *writ denied*, 01-3162 (La. 2/22/02), 810 So. 2d 1143.

The appropriate standard of review depends on whether Shacklette was subject to a civil or criminal contempt proceeding. *Swan v. Swan*, 35,393 (La. App. 2 Cir. 12/7/01), 803 So. 2d 372. In a *criminal* contempt

proceeding, the purpose is to punish a person for disobeying an order issued by the court. *Id.*; *In re Milkovich*, 493 So. 2d 1186 (La. 1986); *State in the Interest of R.J.S.*, 493 So. 2d 1199 (La. 1986). The punishment is punitive and intended to vindicate the court's authority. *Swan*, *supra*. In a civil contempt proceeding, the aim of the court is to force the person into compliance with an order. *Swan*, *supra*; *State in Interest of R.J.S.*, *supra*. The punishment is remedial and intended for the benefit of the complainant. *Swan*, *supra*. A sentence of imprisonment is considered remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order, but punitive if it is limited to imprisonment for a definite period. *Id.* A fine is remedial when it is paid to the complainant, but considered punitive when it is paid to the court, although such a fine is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. *Id.*

A contempt proceeding ancillary to a civil proceeding assumes the quality of a criminal or quasi-criminal proceeding only after a criminal sentence is imposed. *Id.*; *Fontana v. Fontana*, 426 So. 2d 351 (La. App. 2 Cir. 1983), *writ denied*, 433 So. 2d 150 (La. 1983). When a determinate sentence is rendered without setting conditions for the contemnor to avoid the sentence imposed or purge himself of it, the punishment is criminal in nature and cannot be imposed unless federal constitutional protections are applied in the contempt proceeding. *Swan*, *supra*. This Court in *Meek v. Meek*, *supra*, made a distinction between a civil and criminal contempt proceeding based on whether the court imposed a criminal punishment in the form of a determinate sentence. In *Meek*, the court found that the defendant attorney had been held in *civil* contempt because the trial court's sentence of

incarceration was conditioned on the successful completion of a six-month probation period that would effectively purge her of a jail sentence; therefore, she was not entitled to the protections due a criminal offender.

Criminal contempt is a crime in every fundamental respect, and the defendant in a criminal contempt proceeding is entitled to the basic constitutional protections such as the presumption of innocence, the right to proof of guilt beyond a reasonable doubt, and the right not to be compelled to testify against himself. *State in the Interest of R.J.S.*, *supra*; *State v. Davis*, 52,217 (La. App. 2 Cir. 05/22/19), 273 So. 3d 670, *writ denied*, 19-00928 (La. 11/25/19), 283 So. 3d 496. When a determinate sentence is rendered without setting conditions for the contemnor to avoid the sentence imposed or purge himself of it, the punishment is criminal in nature and cannot be imposed unless federal constitutional protections are applied for the contempt proceeding. *Swan*, *supra*. If punished under La. R.S. 13:4611 with jail, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a contempt defendant is entitled to a rule for contempt setting out the alleged contempt correctly, precisely, and explicitly so that the defendant knows the nature of the charges against him. *State in the Interest of R.J.S.*, *supra*; *DeGruy v. DeGruy*, 98-1416 (La. App. 4 Cir. 01/27/99), 728 So. 2d 914.

An appellate court reviewing a conviction of criminal contempt must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt the defendant willfully disobeyed a lawful order of the court. *State in the Interest of R.J.S.*, *supra*. In a civil contempt, the stringent criminal burden of proof and standard for appellate review do not apply.

8

*Meek*, *supra*. The burden of proof for civil contempt is by a preponderance of the evidence and appellate review is by the manifestly erroneous standard. *Id.*; *Davis*, *supra*.

In the first instance of Shacklette's alleged contempt, the trial court's reasoning was that he had been disrespectful to the court by way of his continuous objections and his statements that the court's evidentiary ruling "emasculated the need for a trial" and he was arguing for the appellate court. The court did not find him in contempt during the hearing in which the conduct took place; rather, it unilaterally informed Shacklette of the contempt finding and $100 fine in the hearing six days later, without any rule of contempt or other notice, and imposed the fine without any conditions. Shacklette had no opportunity to be heard before imposition of the fine. Although only a fine had been issued at this point, it was nevertheless a criminal contempt because the punishment was punitive and intended to vindicate the court's authority, and it was to be paid to the court.

When Shacklette stated that he refused to pay the $100 fine and allegedly engaged in "a breach of the peace, boisterous conduct and a violent disturbance that interrupted and interfered with the business of the court," the court imposed the 24-hour jail sentence. Review of the transcript alone indicates the trial judge stated that Shacklette would be sentenced immediately after stating he would not pay the fine. The sentence was clearly punitive such that the contempt would be criminal in nature, and like the fine, had no conditions that would purge him of the sentence.

As a criminal contempt matter, this Court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt

that the defendant willfully disobeyed a lawful order of the court. In *In re Milkovich*, *supra*, an attorney's repetitious legal argument during his opening statement in a criminal trial, after the court had ordered him not to argue the case at that stage of the trial and had sustained four objections to his argument, was found not to support a contempt conviction because the evidence was legally insufficient to show that the attorney intended to defy the court's authority. Further, in *In re Masinter*, 355 So. 3d 288 (La. 1978), the offending attorney stated at one point that "nobody seems to want to get to the truth here," and when later asked by the court if he was accusing the court of suppressing the truth, the attorney stated, "I may just have to do that later." The Louisiana Supreme Court noted that the statements were improper and unwise, but not contemptuous under the circumstances. Also, in *Meek*, *supra*, this Court held that the comment, "you're the one that wears the black robe judge that's your call," was neither flippant, an insult to the court, nor intended to impair the court's dignity or respect for the court's authority, and reversed the applicable fine and jail time.

It is clear that Shacklette strenuously objected throughout the trial, in particular to the admission of testimony regarding a police report. Without delving into unnecessary detail regarding the admissibility of police reports and testimony or information related thereto, since it is not the subject of the appeal, Shacklette rightfully objected to the court's rulings. His statement that the court's ruling "emasculates the need for a trial" was an understandable response, and it was not so disrespectful that it would rise to the level of contemptuous. He merely explained his stance on the effect of the ruling, and did not impair the dignity of the court in doing so. The court even agreed with him that he should make certain objections to preserve the

10

record. As for Shacklette's conduct at the October 30 hearing, the only evidence in the record of such is his statement that he would not pay the fine – which should not have been imposed to begin with. The court gave no conditions to the sentence, such as paying the fine to avoid a sentence. There is no additional evidence of his actions in the record to support a finding that his conduct was contemptuous.

Further, because the contempt matters were both criminal in nature, the court should have precisely identified Shacklette's conduct that gave rise to the contempt finding and afforded him his constitutional right to an opportunity for a hearing assisted by counsel. The trial court failed to do so neither prior to the initial finding of contempt and imposition of the fine, nor after he was sentenced in response to his statement that he would not pay the fine. Instead, when Shacklette asked for an abeyance to presumably file a writ, he was told by the trial judge that he was still being disrespectful and she did not respond to his statement that he could not be held in contempt without giving him a hearing with counsel. The court's subsequent hearing after the contempt finding was made and sentence carried out in no way satisfied the requirement of due process.

## CONCLUSION

For the foregoing reasons, this Court REVERSES the trial court's judgment finding Shacklette in contempt and VACATES his sentence.

**REVERSED and VACATED.**

11