930 So.2d 1068 (2006)
Amanda R. ARRINGTON, Plaintiff-Appellant
v.
Larry D. ARRINGTON, Defendant-Appellee.
No. 41,012-CA.
Court of Appeal of Louisiana, Second Circuit.
April 26, 2006.
*1069 Loomis & Dement, by Albert E. Loomis, III, Monroe, for Appellant.
Dollar Laird, L.L.P., by Johnny E. Dollar, Monroe, for Appellee.
Before GASKINS, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
In this case, following an initial trial rejecting appellant's claim for domestic abuse protection, the record of this divorce and family law proceeding was sealed. After a violation of the trial court's order, the appellant was first held in contempt of court in 2001 for her continuing publication of her claims for domestic abuse. The present appeal concerns the court's second judgment of contempt against appellant and its order of child support in favor of appellee. Finding that appellant's constructive contempt was not proven beyond a reasonable doubt, we reverse the trial court's ruling on contempt. After amending the amount of the child support award, we affirm the judgment of child support.

Facts
Amanda Arrington McDowell ("Amanda") and Larry D. Arrington ("Larry") were married on March 18, 1990, and were last domiciled together as husband and wife in Union Parish. The marriage was terminated by judgment of divorce on May 31, 2002. The parties have joint custody of their only biological child, Haley, who is presently 12½ years old. An older child whom Larry adopted named Briana is now over age 18.
The issues in this proceeding involve Amanda's payment of support for Haley, for whom Larry is now the domiciliary parent, and the trial court's finding of Amanda in contempt for certain charges of domestic abuse by Larry that she communicated to others, allegedly in violation of a prior gag order imposed by the court. Amanda's charges, which were determined as unfounded by the trial court, were allegedly detrimental to Larry's employment as an officer and bailiff with the Union Parish Sheriff's Department.
*1070 Amanda filed her initial petition on September 4, 2001, requesting relief, including a temporary restraining order for domestic abuse protection under La. R.S. 46:2131, et seq. The hearing was set for September 17, 2001. Eight days later, Amanda sued Larry for divorce, alleging that they were physically separated on September 4, 2001. Amanda requested sole custody of Haley, and the designation as domiciliary parent of Briana. The divorce petition also requested that the temporary restraining order be converted to a preliminary injunction.
An initial consolidated hearing occurred on September 17, 2001. Though no transcript of that proceeding is in the record, the October 5, 2001 judgment which resulted from the hearing indicates that Amanda's charges for domestic abuse were not established by her evidence presented at the hearing and were denied. Additionally, the judgment provided that "each party shall refrain from making disparaging comments of any kind about each other to the minor children; and shall also refrain from harassing or annoying conduct directed at each other." The parties entered stipulations concerning joint custody of Briana and Haley and mutual psychological evaluations. The interim ruling designated Amanda as the domiciliary parent of both children, set Larry's visitation schedule including telephone contact, and ordered him to pay child support. Notably, the minutes of the September 17th hearing and the October 5, 2001 judgment reflect that the record was sealed.
On September 27, 2001, Amanda enrolled new counsel and filed an amended and supplemental petition for divorce, which reasserted allegations contained in the original petition for domestic abuse protection. A temporary restraining order issued on September 27, 2001. On October 5, 2001, Larry filed a motion to vacate the September 27th order and for sanctions. The following week, on October 12, 2001, Larry filed his first rule for contempt, alleging Amanda's violation of the court's October 5, 2001 judgment. The contempt charges arose out of a public incident between the parties at the church they both attended. The hearing on the contempt rule occurred on October 22, 2001. The judgment found Amanda in contempt, ordered her to jail for 24 hours or until she paid a fine of $250, and cast her in judgment for Larry's attorney's fees totaling $900 and all costs. The minute entry states: "Mr. Arrington is allowed to have contact with the children and the parties are prohibited from harassing one another."
The partial transcript for the hearing on the 2001 contempt ruling reveals the following basis for the trial court's dissatisfaction with Amanda's conduct in the community in light of its prior ruling finding no evidence of Larry's abuse and its order sealing the record:
THE COURT: . . . There's no evidence of any misconduct by Mr. Arrington. Now, Mrs. Arrington sat right here in the courtroom while the Court ordered the record to be sealed because of the allegations by Mrs. Arrington towards Mr. Arrington. And what does she do in response to that? She makes copies of the amended and supplemental petition and passes them out to her friends at the church.
* * *
She came to court on the 17th and she didn't get what she wanted. She got, probably, angry at everybody here who ruled against her and she was going to get back to Mr. Arrington by doing what she did, which led to the pleadings of September the 27th.

*1071 * * *
It is a very difficult thing to un-ring a bell. It's impossible to un-ring a bell. And what you have said to the members of your church and what you have said in the community about your husband's behavior is disgusting. You have spread rumors that you can't prove. You have spread ideas in the minds of these people that you can't undo.
* * *
If we have to come back on another rule of this type you know what the consequences are.
As a result of a two day trial in March, 2002, concerning incidental matters including child custody, the parties were awarded joint custody with Larry designated as domiciliary parent of Haley. No child support was ordered to be paid to either party but, in conformity with the trial court's reasons, the judgment of May 31, 2002, provided as follows:
Child support shall be equally divided, with Mrs. Arrington paying for all the support of Briana and Mr. Arrington paying for all the child support of Haley. Both parents being employed with benefits, each shall carry the child in their domicile on their medical insurance coverage with their employer at their expense.
Significantly, in the trial court's prior written reasons for the judgment concerning custody, the court found:
There is a history of Mrs. Arrington repeatedly making serious, but false, malicious allegations to law enforcement personnel, nurses, school workers and church members about the alleged abuse which she attributed to Mr. Arrington. The Court finds Mrs. Arrington's testimony to be unreliable, untruthful and beyond belief. It is therefore rejected.
The court also denied Amanda's request for relief under the Post Separation Family Violence Relief Act in the May 2002 ruling.
The matters which have resulted in this appeal began when Larry filed his second rule for contempt on November 9, 2004, alleging that Amanda had written two letters in violation of the court's gag order. One month later, Larry filed a second motion requesting child support for Haley because Amanda's reciprocal support obligation had been altered when the older child turned eighteen in 2003. Amanda thereafter filed her own rule for contempt, alleging Larry's interference with her telephone contact with Haley during two intervals, violating the joint custody judgment dated May 31, 2002.
At the hearing on these rules, Amanda, Larry and Sheriff's Deputy Flora Ebarb testified. At the time of the hearing, Amanda had married John McDowell and Larry had been terminated in February 2005 from his employment with the Sheriff's Department. After hearing testimony and receiving evidence, the case was submitted. The trial court, in written reasons, found that Larry had no income, and that Amanda's income from her employment as a teacher and from other sources was $52,500 annually. Additionally, the trial court determined that she derived a benefit of $1,000 monthly in reduced living expenses from her husband's $48,000 annual income. The trial court ordered Amanda to pay $750.00 per month child support for Haley until she turned 19. Larry was found free of contempt. The trial court found Amanda in contempt as follows:
The Court finds Mrs. McDowell to be in constructive contempt of Court and now fines her $1,000.00, to be paid within 15 days to be paid into the Criminal Court Fund of Union Parish through the Sheriff and/or Police Jury offices of that Parish. Having found Mrs. McDowell *1072 guilty of contempt on a previous occasion in this matter, and having Mrs. McDowell ignore the orders of this Court a second time, the Court now sentences Mrs. McDowell to 15 days in the Parish Jail, of which the last 10 days are suspended and she is placed on probation with a special condition that she not write to any of the 135 people on her mailing list and that she not talk about Mr. Arrington to anyone except her attorney for two years.
Finally, the trial court ordered Amanda to pay Larry's attorney's fee in the sum of $3,975 plus all costs, within thirty days. The judgment in conformity therewith was signed on August 24, 2005. It is from this judgment that Amanda appeals.

Discussion

I.
Larry's motion for contempt alleged that Amanda violated the court's 2001 order sealing the record on the grounds that she had transmitted letters to "Friends and Family" in 2003 and 2004. Larry asserted that these letters revealed information to third parties about this suit which caused Larry embarrassment and humiliation in the community. Larry requested attorney's fees, interest and costs in connection with his prosecution of Amanda's violation of the court's order. The trial court considered these letters and others and found Amanda in contempt, awarding the requested attorney's fees.
Initially, we note that the punishment imposed upon Amanda for five days in jail was unconditional and thus criminal, rather than civil, in nature. Rights attendant to criminal prosecution are therefore implicated. Brown v. Taylor, 31,352 (La. App.2d Cir.2/26/99), 728 So.2d 1058. In Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), the United States Supreme Court explicitly stated that criminal contempt must be proven "beyond a reasonable doubt." Notably, we find that the criminal punishment applicable to this contempt is the misdemeanor penalty set forth under La. R.S. 13:4611(1)(d). The potential 12-month penalty under La. R.S. 13:4611(1)(b)[1], applicable to contempt resulting from violations of injunctive relief requested by the parties, is inapplicable since Larry never obtained a temporary restraining order, preliminary injunction or permanent injunction pursuant to La. C.C.P. arts. 3601, et seq.
Amanda argues that there was no clear injunctive order by the trial court specifically restraining the conduct which gave rise to her present contempt conviction. The prior order sealing the record is, according to Amanda, insufficiently vague in its implications to justify the criminal contempt found in this case.
"Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court" constitutes a constructive *1073 contempt of court. La. C.C.P. art. 224(2). To find a person guilty of constructive contempt, it is necessary to find that the contemnor violated the order of court intentionally, knowingly, and purposely, without justifiable excuse. Swan v. Swan, 35,393 (La.App.2d Cir.12/7/01), 803 So.2d 372; Estate of Graham v. Levy, 636 So.2d 287 (La.App. 1st Cir.4/8/94), writ denied, 639 So.2d 1167 (La.1994). The trial court is vested with great discretion in determining whether a person should be held in contempt for disobeying a court order. Estate of Graham v. Levy, supra. However, proceedings for contempt are strictly construed and extending their scope is not favored. Meek v. Meek, 36,467 (La.App.2d Cir.9/18/02), 827 So.2d 1191.
Since this contempt involves unconditional punitive punishment, the so-called "void-for-vagueness" doctrine used for the measure of a criminal statute is a proper consideration. See, State v. Hair, 00-2694 (La.5/15/01), 784 So.2d 1269. Just as a criminal statute under that doctrine must give adequate notice to an individual that certain contemplated conduct is proscribed, the trial court's directive that ultimately leads to a charge of constructive contempt must give such notice.
Addressing the trial court's issuance of an order sealing the record and placing a gag order on the parties, the court in Sanders v. Gore, 95-660 (La.App. 3d Cir.7/10/96), 676 So.2d 866, 874, writ denied, 96-2072 (La.11/15/96), 682 So.2d 762, observed:
La.Code Civ. P. art. 1631 provides the trial court with the power "to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." Furthermore, under La.Code Civ. P. art. 191, the trial court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not expressly granted by law. This power certainly extends to issuance of protective orders to assure the fair administration of justice under proper circumstances. Economy Carpets Mfrs. & Dist., Inc. v. Better Bus. Bureau of Baton Rouge, La., 319 So.2d 783 (La. 1975).
Amanda's early petitions to the court for domestic abuse protection alleged that Larry physically abused and threatened her and the children and that these actions arose out of his past anger. Additionally, allegations of "sexually abhorrent behavior" were charged. After an evidentiary hearing on these allegations, the court found no abusive conduct by Larry, and the record was sealed. Soon thereafter Amanda was first held in contempt in 2001 for publicly accusing Larry of similar misconduct and publicizing the pleadings of this suit charging Larry with abuse. The trial court's directives to Amanda proscribing this conduct gave clear notice and go beyond the order which merely sealed the record. We therefore find that Amanda could easily understand that which the trial court expected of her in these proceedings concerning her communication of these false (and sealed) charges of Larry's misconduct during their marriage.
We will next review whether the evidence showed beyond a reasonable doubt that Amanda's conduct in the present matter violated the trial court's orders. In this regard, Larry presented copies of nine letters written between July 2002 and December 2005 which Amanda mailed to one hundred or more of her friends and family. These people included fellow members of her church in Farmerville and other acquaintances which she had made through her Christian ministry work in various churches in Louisiana and elsewhere. The letters updated developments *1074 in Amanda's life and Christian endeavors, and in all the letters, Amanda sought prayer from her network of friends or "prayer partners." The letters also describe in general terms the ongoing custody proceedings concerning Haley and a property settlement dispute between herself and Larry. In three of these letters written in the summer of 2002, she first reported the trial court's recent custody ruling granting Larry primary custody of Haley. She then described in a second letter a dispute over summer visitation with Haley which threatened the summer travel for her ministry work. She concluded the letter asking for prayers for the resolution of the dilemma, including the following:
I need someone to pray for Judge Cunningham. I don't even know what to tell you to pray. Larry Arrington needs prayer. He is so angry.
One week later, she reports in a third letter, a resolution of the conflict over her summer travel with Haley on her ministry trip. She concludes for requests for prayer that:
. . . the judge be led by the Lord. Also, please remember to pray for Larry. I will know this man the rest of his life. I really believe he loved me once, and although I don't believe we will ever get back together, we still need to get along.
The remaining six letters throughout 2002, 2003, 2004 and 2005 describe generally the course of her ongoing litigation.
From our review of these letters, there is one statement quoted above regarding Larry's 2002 anger over the custody dispute. Otherwise, the letters only describe without detail the litigious positions of the former spouses in the ongoing proceedings. The letters do not evidence any repeated communication of the allegations of Amanda's domestic abuse petitions which the trial court determined as untrue and which prompted the original sealing of the record. Likewise, when Larry's 2005 dismissal from employment with the sheriff's department was discussed at the trial by another employee of that office, there was no evidence that Amanda made disparaging charges or communications to the department after the fall of 2001 which caused Larry to lose his job. Of course, Amanda's original unsubstantiated allegations about Larry were known by the sheriff in 2001 before the record was sealed. Nevertheless, the testimony of Larry's dismissal did not indicate that he was fired because of Amanda's complaints.
In finding Amanda in contempt, the trial court first noted that the impropriety of Amanda's initial petition accusing Larry of "domestic abuse, battery, and horrible, disgusting and reprehensible behavior" led to the sealing of the record. The court then ruled as follows:
The Court finds that Mrs. McDowell has continually spread malicious, false and derogatory information into Farmerville about Mr. Arrington, leading to his dismissal as a Deputy Sheriff in February 2005. There were four complaints about Mr. Arrington in his sheriff's office personnel file, but according to the testimony of the Chief Civil Deputy on May 27, 2005, "these complaints were not unusual" (for a Union Parish deputy). This Court finds that the sole and proximate cause of Mr. Arrington being dismissed as a Deputy was the continuing, unrelenting abuse and permeating rumors released into the community gossip mill by Mrs. McDowell, reflecting directly on Mr. Arrington and the Union Parish Sheriff's Department.
From our review of the record, the trial court's conclusion that Amanda's charges against Larry during August-October 2001 ultimately cost him his job may be reasonable despite contrary testimony of the sheriff's civil deputy. Nevertheless, Amanda was already held in contempt for *1075 that conduct in 2001. The court's conclusion therefore had no relevance for the present contempt charge which must be adjudicated on the basis of its directives to Amanda proscribing her conduct thereafter and on the content of her nine letters which Larry asserted as the relevant contemptuous conduct.
From our review, those letters clearly do not communicate the sealed allegations of "reprehensible behavior" recognized by the trial court as improperly asserted. There is no evidence that Amanda repeated those false charges after October 2001. The reason for sealing the record was aimed at those false charges. However, the order sealing the record was not accompanied by a general gag order prohibiting either party from commenting to persons other than counsel concerning the further course of the proceedings which was unrelated to Amanda's descriptions of Larry's actions before the parties' separation. Amanda was only instructed orally by the court to refrain from further spreading those charges which the court determined to be false and malicious, and each party was generally instructed not to harass the other. The letters do not republish the allegations of "reprehensible behavior," and they do not amount to any harassment of Larry.
Accordingly, we find the trial court's ruling that Amanda continued to spread the unsubstantiated and sealed charges against Larry after October 2001 unsupported by the evidence. The criminal contempt now imposed must be shown to rest on the wilful disobedience of a specific directive of the court proven beyond a reasonable doubt. The trial court's judgment for contempt against Amanda and the award of attorney's fees[2] are reversed.

II.
In contrast to the imposition of the punitive contempt for Amanda's conduct, the trial court's refusal to hold Larry in contempt is afforded much discretion, as it falls outside the strict measures of the criminal law. Amanda's rule for contempt alleged that Larry did not allow telephone contact with Haley during two intervals, between February 1 and April 9, 2004 (a period of 58 days), and between December 30, 2004 and mid-January 2005, when the motion for contempt was filed. She alleged that when she called Haley, Larry did not permit Haley to come to the phone, and that such conduct violated the "spirit" of the May 31, 2002 joint custody judgment.
The joint custody judgment designated Larry the domiciliary parent of Haley. Amanda testified that when Larry's allegedly contemptuous conduct took place, Haley was 10 or 11. The custody judgment awarded visitation to Amanda every other weekend from 5:00 p.m. on Friday to 5:00 p.m. on Sunday, and divided the summer vacation period equally. Thus, Amanda's alternating weekend schedule was in place during the school year, when the alleged violations of the custody judgment occurred. The judgment is silent concerning specific telephone visitation for either party.
Under the circumstances, it cannot be overlooked that Amanda had ample opportunity by the exercise of her weekend visitation right to communicate with Haley during the 58-day period in question. Regardless of Amanda's contentions that Larry surreptitiously prevented telephone communications, the trial court's weighing of such parental misconduct does not *1076 automatically require the imposition of contempt. Credibility issues were clearly involved in the court's ruling, and the appellate court will not disturb the discretion of the trial court under these circumstances. Amanda's assignment of error is without merit.

III.
Finally, we have combined Amanda's first and third assignments of error regarding the trial court's judgment in Larry's favor ordering the payment of $750/ month child support until Haley reaches age 19. The trial court found that Larry had no income and that Amanda's annual income was $52,500. Additionally, Amanda's living expenses were reduced by $1,000/month due to her new husband's employment and annual income totaling $48,000. Amanda argues that due to the circumstances of Larry's termination, he should be deemed voluntarily unemployed. Additionally, the expense sharing figure attributed to supplement Amanda's income is contested in view of her testimony that only $450 per month was the total of shared expenses. Lastly, since child support terminates at age 18 under La. R.S. 9:315.22(C), Amanda disputes the judgment's language extending support until Haley reaches age 19.
The issues raised by Amanda primarily involve the application under the support guidelines of La. R.S. 9:315(C)(5) which provides as follows:
(5) "Income" means:
(a) Actual gross income of a party, if the party is employed to full capacity; or
(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.
(c) The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.
When determining whether a party is underemployed for purposes of calculating a child support obligation, the court shall consider that party's earning capacity in light of all circumstances. Luplow v. Luplow, 41,021 (La.App.2d Cir.2/28/06), 924 So.2d 1135. A trial court has wide discretion in assessing a witness's credibility in situations concerning an obligor spouse's alleged voluntary unemployment, and this court has held that such factual determinations will not be disturbed on appeal absent an abuse of that discretion. See, Luplow v. Luplow, Id. Voluntary underemployment is a question of good faith of the obligor spouse. Wyatt v. Wyatt, 39,518 (La.App.2d Cir.4/6/05), 899 So.2d 788.
An award of child support continues with respect to any unmarried child who attains the age of majority as long as the child is a full-time student in good standing in a secondary school, has not attained the age of nineteen, and is dependent on either parent. La. R.S. 9:315.22(C), Curtis v. Curtis, 34,317 (La.App.2d Cir.11/1/00), 773 So.2d 185.
Amanda's argument concerning Larry's unemployment insists that the trial court was wrong in its conclusion, discussed above, that her allegations cost him his job. Nevertheless, that dispute is irrelevant[3] for consideration of "potential *1077 income" under La. R.S. 9:315(C)(5)(b), because Larry's involuntary dismissal from the sheriff's department and his unemployment are undisputed facts. The question under the statute is simply whether Larry was shown at trial to have income potential but had neglected to regain meaningful employment. At the time of the May 27, 2005 trial, Larry had been unemployed for three months following his dismissal as a deputy. He testified concerning his attempts to find employment with other law enforcement agencies and the possibility of relocation out of the Farmerville area. From this testimony, we find that the trial court could conclude that Larry's unemployment or underemployment did not result from his fault or neglect. Child support review is a matter of the trial court's continuing jurisdiction for modification which may measure Larry's future efforts in obtaining employment and adjust the support obligation accordingly. La. C.C. art. 140; La. R.S. 9:311.
Likewise, we find no error in the trial court's determination that Amanda's yearly income was $52,500. The large and variable amount of oil and gas royalties (based on 2004 receipts) which supplemented her income as a public school teacher permits that assessment. Also, the evidence of John McDowell's annual income supports the additional $1,000 per month for Amanda's expense-sharing benefit. Her total monthly income under the guidelines is therefore $5,375, which yields a basic child support obligation of $733. La. R.S. 9:315.19. The trial court's monthly award of $750 will therefore be amended to $733 in accordance with the statutory schedule.
Lastly, the language of the judgment extending the support obligation for Haley to age 19 is of course subject to the application of La. R.S. 9:315.22(C). The support obligation will end when Haley reaches age 18 unless Larry demonstrates facts of continued dependency during her secondary education as set forth in the law.

Conclusion
The ruling of the trial court holding Amanda in contempt and awarding attorney's fees is reversed. The award of child support to Larry in the amount of $750 per month is amended to $733 per month. In all other respects the judgment is affirmed. Costs of appeal are assessed equally to both parties.
REVERSED IN PART AND AMENDED IN PART; AFFIRMED AS AMENDED.
NOTES
[1] La. R.S. 13:4611(1)(b) and (d) provide as follows:

Except as otherwise provided for by law:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts, and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:
* * *
(b) For disobeying or resisting a lawful restraining order, or preliminary or permanent injunction, by a fine of not more than one thousand dollars, or by imprisonment for not more than twelve months, or both, except in juvenile courts and city courts, in which punishment may be a fine of not more than one thousand dollars or imprisonment for not more than six months, or both.
* * *
(d) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.
[2] We note that Larry cites no statutory basis for any award of attorney's fees for a contempt ruling under La. R.S. 13:4611 or otherwise. Attorney's fees are not allowed except where authorized by statute. Maggio v. Robinson, 31,913 (La.App.2d Cir.5/5/99), 741 So.2d 103.
[3] The court's conclusion regarding the cause of Larry's dismissal was reached in its opinion concerning Amanda's contempt and was not presented as a relevant consideration for gauging Larry's income potential.