PETERS, J.,
dissenting.
U respectfully disagree with the majority’s affirmation of the trial court’s judgment ordering Mrs. Seaman to pay a $756.00 monthly child support obligation. I find that not only is the evidence insufficient to establish that Mrs. Seaman was underemployed, it is also insufficient to establish Mr. Seaman’s income for child support purposes.

Issue of Voluntary Underemployment

In this case, the record establishes that Mrs. Seaman has a Bachelor of Arts degree in Elementary Education, having graduated from Northwestern State University in 1991. She taught until 1997, when she left the profession to marry Mr. Seaman, a practicing Natchitoches, Louisiana lawyer. From that time until the parties separated, her only employment was in her husband’s law office or in his various business investments.
As pointed out by the majority, La.R.S. 9:315(0(5) provides that “[a] party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.” (Emphasis added). Additionally, the burden of proving underemployment lies with the party | ^claiming that fact — in this case the state.[1] See Arrington v. Arrington, 41,012 (La.App. 2 Cir. 4/26/06), 930 So.2d 1068.
The state’s evidence concerning Mrs. Seaman’s unemployment status consists entirely of the testimony of Ms. Hicks, who could only testify that Mrs. Seaman informed her in a telephone conversation of her problems in obtaining a teaching position in Colorado, and that she followed up that conversation with a telephone call to the Eagle County School District (the *789 county where Mrs. Seaman was then residing). With regard to that conversation, Ms. Hicks testified only that she obtained information concerning the pay scale of a Colorado teacher.[2] Additionally, Ms. Hicks based all of her income assertions on Mrs. Seaman obtaining employment in the Shreveport, Louisiana area. However, the state presented no evidence to suggest that a position would be available for a teacher who had been out of the classroom for fourteen years, nor did it establish the Mrs. Seaman had maintained her certification in Louisiana such that she would even qualify for a teaching position.
The uncontested evidence, concerning Mrs. Seaman’s efforts in obtaining employment after leaving Louisiana, is that she worked numerous jobs and appears to have seldom been unemployed. She made every effort to find a teaching position in Colorado, but was denied certification because she had a pending felony charge in Louisiana which arose from the contentious divorce proceedings.[3] When that charge was finally dismissed, she did obtain a Colorado teaching |scertifieate, and, at the time of trial of this matter, was enrolled in online courses to earn a master’s degree in education and better increase her chances of obtaining a teaching position in Colorado. She only obtained her Colorado teaching certificate in September of 2010. Obviously, by that time the 2010-11 school year had begun and teacher quotas were filled. Trial on this matter was held before the 2011-12 opportunities arose for her.
In my opinion, the state never met its burden of proving that Mrs. Seaman was voluntarily underemployed. In fact, the evidence clearly established that Mrs. Seaman was underemployed through no fault or neglect of her own. La.R.S. 9:315(C)(5). To conclude otherwise would be to conclude that although Mrs. Seaman worked long hours at menial jobs averaging $10.00 per hour, she did so to avoid the increase in child support payments that would be effected by her taking a teaching position. “Voluntary unemployment or underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse.” Martello v. Martello, 06-594, p. 13 (La.App. 1 Cir. 3/23/07), 960 So.2d 186, 197. I find nothing to suggest that Mrs. Seaman’s situation was based on anything other than her good faith in attempting to find suitable employment. Furthermore, there is no Louisiana law requiring Mrs. Seaman to more from her resident state to another state in order to seek employment. See Lauve v. Lauve, 08-76 (La.App. 4 Cir. 8/20/08), 6 So.3d 184. The trial court should have evaluated Mrs. Seaman’s child support obligation based on a $10.00 per hour income.

Issue of Mr. Seaman’s Income for Support Purposes

Next, the trial court erred in setting Mr. Seaman’s monthly income for child support purposes based solely on the state’s assertion of the content of part of his 2010 Federal tax return. Mr. Seaman testified that he suffered substantial business 14losses in 2008 and 2009, and that he anticipated a significant loss when he sold certain Montana property later in 2011. Given the fact that Mr. Seaman was still involved in business ventures outside his *790 law practice in 2010, it stands to reason that the 2010 Federal tax return would address that financial involvement.
Despite the fact that his continuing business activity outside the practice of law clearly affected the amount available for child support, the state’s counsel made statements throughout the proceedings concerning his interpretation of Mr. Seaman’s tax returns. In the most significant of these statements to the trial court, he suggested that “in [his] opinion” only one portion of the 2010 Federal tax return should be considered in setting the child support because everything else was irrelevant. That portion of the 2010 Federal tax return involved only the income derived by Mr. Seaman from his law practice. The state’s counsel initially set Mr. Seaman’s income at $11,840.00 per month[4] —an amount significantly better than the resulting income from the 2008 and 2009 Federal tax returns. The trial court accepted counsel’s assertion as evidence in ultimately setting the amount of support due from Mrs. Seaman.
What makes the use of the 2010 Federal tax return, as evidence of Mr. Seaman’s financial situation for child support purposes, unsupportable is that not only did Mrs. Seaman not have a copy of the return, but she was denied access to the return during trial. When the state’s counsel made his assertions to the trial court, Mrs. Seaman requested a copy to review. The state’s counsel refused to provide her a copy citing some unspecified federal prohibition against sharing the information. Mr. Seaman expressed his agreement with the state’s position, and | swhen Mrs. Seaman requested that the trial court allow her a copy, the trial court responded that it denied her request. Thus, a portion of her former husband’s 2010 Federal tax return was used against Mrs. Seaman, not through Mr. Seaman’s testimony, but through assertions made by the state’s counsel that nothing else contained in the return was relevant to the proceedings before the trial court.
The importance of Mrs. Seaman’s inability to present any sort of a defense to the content of the tax return was highlighted by Ms. Hicks’ comments to the state’s counsel to the effect that the return also reflected Mr. Seaman’s receipt of social security benefits for himself and the two children in 2010 — something that the state’s counsel had overlooked or had determined to be irrelevant.[5]
This error was compounded when Ms. Hicks attempted to recalculate the worksheet using this information. She used the social security information to increase Mr. Seaman’s monthly income from $11,839.85 to $15,138.83. This had the effect of increasing the total child support obligation from $3,856.47 to $4,097.64 and of decreasing Mrs. Seaman’s obligation from $865.39 to $756.00. The problem is that while she increased the monthly income by the amount Mr. Seaman received for himself in social security benefits, she did not decrease the combined support obligation by the amount Mr. Seaman was receiving for that very purpose. Assuming everything else to be correct, that amount should have been reduced by over $1,000.00. Also, with regard to the worksheet, in her testimony Ms. Hicks also volunteered that Mr. *791 Seaman was paying $413.65 in health insurance benefits and $811.25 so that the children could attend a private | (¡school.[6] There was no evidence from Mr. Seaman that he paid these amounts, but more important, there was no evidence presented of a special need for private school attendance. See State, Dep’t of Social Services v. Swords, 08-580 (La.App. 8 Cir. 11/5/08), 996 So.2d 1267.

Other Issues

Although I believe the matter should be reversed and remanded on the two primary issues previously discussed, there are other issues that require attention by the trial court on remand. It is obvious that the matter before us overlaps with the civil litigation which apparently is still going on between Mr. and Mrs. Seaman. Although the state filed a separate action to set child support, it did so by rule to show cause rather than petition. This resulted in the trial court falling into error in setting the effective date of child support payments. The state did not file its action until March 29, 2010, and trial on the rule was held June 20, 2011, Still, the trial court made its support judgment retroactive to October of 2010. This was error. Additionally, October of 2010 is apparently the date the civil pleadings first addressed the support issue and certainly raises lis pendens issues.
The importance of requiring the state to prove its claims against Mrs. Seaman is found in the enabling statute authorizing the state’s cause of action in matters similar to the one now before us. In its initial pleading, the state asserted that it was seeking the setting of a child support obligation as well as an income assignment order under La.R.S. 46:236.3. As described in the provisions of law that follow that statute in Title 46 of the Revised Statutes, the obligations imposed on Mrs. Seaman after judgment are much more severe than in the civil process, and border on quasi-criminal penalties.
|7I would reverse the entire judgment and remand it for a hearing wherein the parties could present competent evidence upon which the trial court could rule.

. The majority suggests that Mrs. Seaman has the burden of proof.

. It is difficult to believe that Ms. Hicks made no inquiries concerning employment opportunities in Colorado since Mrs. Seaman’s employment opportunities is the basic issue in this litigation. However, she did not share that information with the trial court.

. Mrs. Seaman presented evidence of twenty-five applications for teaching positions in Colorado.

. Counsel for the state had to later modify this amount by increasing it to $15,138.83 when Ms. Hicks pointed out to him that Mr. Seaman was also receiving social security benefits for himself and the two children.

. It is significant to note that while the state refused to provide Mrs. Seaman with a copy of her former husband’s 2010 Federal tax return, one of the items of evidence sought by the state in its original pleading was Mrs. Seaman’s 2010 Federal tax return.

. Although Mr. Seaman testified concerning some discovery issues, he did not testify con-ceming his financial situation.