CLEMENT ARTHUR DUGUE', III

VERSUS

AVINGNON MARIE DUGUE'

NO. 20-CA-292

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 763-241, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

March 24, 2021

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Marc E. Johnson

**AFFIRMED**
   **MEJ**
   **SMC**
   **JGG**

COUNSEL FOR PLAINTIFF/APPELLANT,
STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY
SERVICES
     Honorable Paul D. Connick, Jr.
     Jody J. Fortunato
     Lekita G. Robertson
     Blaine B. Moncrief

COUNSEL FOR PLAINTIFF/APPELLEE,
CLEMENT ARTHUR DUGUE', III
     Roch P. Poelman

**JOHNSON, J.**

The Department of Children and Family Services ("DCFS") appeals the Twenty-Fourth Judicial District Court's April 30, 2020 judgment granting Appellee, Clement Arthur Dugué's, Objections to Hearing Officer's Recommendation and Interim Order, finding that Appellee was not voluntarily underemployed, and ordering that the child support and retroactive child support obligations be recalculated. We affirm the district court's judgment for the following reasons.

*FACTS AND PROCEDURAL HISTORY*

Clement Arthur Dugué and Avignon Marie Dugué (now Avignon Marie Lowery) were divorced on June 1, 2018. Three minor children were born of the marriage. Prior to their divorce, on October 14, 2016, an interim judgment was entered awarding the parties joint custody of the children, ordering Mr. Dugué to pay child support, spousal support and certain expenses, and granting Mr. Dugué, the non-domiciliary parent, unsupervised physical custody of the minor children once to twice a week. *Dugué v. Dugué*, 17-525 (La. App. 5 Cir. 6/27/18); 250 So.3d 1174, 1176. Mr. Dugué objected to the hearing officer's recommendations and the interim order and requested a *de novo* hearing before the district court. On February 7, 2017, the district court overruled most of Mr. Dugué's objections and ordered that, with the exception of the modified visitation order, the October 14, 2016 interim judgment remain in effect. Mr. Dugué appealed that judgment and this Court vacated the February 7, 2017 judgment, reinstated the October 14, 2016 interim judgment, and remanded the matter to the district court for a *de novo* evidentiary hearing on Mr. Dugué's objections. *Id*. at 1180.

After remand, on November 8, 2018, the hearing officer filed an Interim Judgment/Stipulations and or Recommendations of Hearing Officer and Reasons for Judgment after she recalculated the child support obligations based on Mr.

Dugué's income during four different time periods: August 12 – December 31, 2016; January – December 2017; January 1 – May 8, 2018; and May 9 – November 2, 2018. In calculating the child support obligation for the first three time periods, the hearing officer used Mr. Dugué's actual earnings, which included varying amounts of overtime, as a basis for determining his monthly gross income to calculate the child support obligation. For the last time period, Mr. Dugué's monthly gross income was much lower because he received unemployment benefits after being laid off from his job at Entergy, through no fault of his own.

Mr. Dugué filed an Opposition/Objection a week later and noted that the parties agreed to go before the hearing officer again in February 2019 in an attempt to resolve the matter. In February 2019, the hearing officer recalculated the child support obligation once more to include a fifth time period that began January 12, 2019, after Mr. Dugué's unemployment benefits had expired. The hearing officer found that Mr. Dugué was voluntarily underemployed and imputed a monthly gross income of $3,333.00 to Mr. Dugué. In response, Mr. Dugué filed another objection and requested a *de novo* hearing before the district court judge.

DCFS filed rules for contempt against Mr. Dugué on February 2019 and September 2019 and prayed that Mr. Dugué be ordered to show cause why judgment should not be rendered against him and the amounts due be made executory, and why he should not be held in contempt pursuant to La. R.S. 46:236.6(D). The hearing officer heard the matter on October 16, 2019 and found that Mr. Dugué was in arrears for $8,371.31 in past due child support and interim periodic support, subject to modification, if Mr. Dugué's pending Objections were granted. A week later, Mr. Dugué objected to the hearing officer's October 16, 2019 recommendations and interim judgment and again requested a *de novo* hearing before the district court judge.

The parties appeared in district court on December 18, 2019 and requested a continuance until February 2020 in hopes of resolving the outstanding issues between them before then. The district court judge heard the matter on February 5, 2020. Mr. Dugué specifically objected to the hearing officer's recommendations and findings that 1) included overtime pay as part of his gross income while employed at Entergy in the calculation of the amount of Mr. Dugué's child support obligation and 2) determined that Mr. Dugué was voluntary unemployed and imputed a monthly income of $3,333.00 to him once his unemployment benefits ended. The judge ordered the parties to submit post-trial memorandums. On April 30, 2020, the district court issued judgment in favor of Mr. Dugué, granted his objections, and ordered the hearing officer to recalculate Mr. Dugué's child support and retroactive child support obligations. The instant appeal followed.

## ASSIGNMENTS OF ERROR

DCFS challenges the district court's April 30, 2020 judgment that granted Mr. Dugué's objections to the interim judgment dated October 16, 2019. DCFS claims that the district court abused its discretion when it ordered the hearing officer to recalculate the amount of Mr. Dugué's child support obligation and exclude extraordinary overtime Mr. Dugué earned while employed by Entergy as income. Further, DCFS alleges that the trial court committed manifest error when it found that Mr. Dugué was not voluntarily underemployed.

## LAW AND DISCUSSION

*Overtime Payments*

The child support determination guidelines, set forth in La. R.S. 9:315, *et seq.*, balance the needs of the children with the means available to parents. *State, Dep't of Soc. Servs. ex rel. A.D. v. Gloster*, 10-1091 (La. App. 5 Cir. 6/29/11); 71 So.3d 1100, 1102. The mutual financial responsibility for their children gives rise to an obligation that must be administered and fairly apportioned between parents.

*Id*., *citing State, Dept. of Social Services ex rel P.B. v. Reed*, 10-410, (La. App. 5 Cir. 10/26/10); 52 So.3d 145, 147, *writ denied*, 10-2611 (La. 2/18/11); 57 So.3d 333. La. R.S. 9:315.19 lists the schedule of basic child support obligations, calculated using the combined adjusted monthly gross income of the parents. Gross income does not include extraordinary overtime "including but not limited to income attributed to seasonal work regardless of its percentage of gross income," if the court, in its discretion, determines that the inclusion of extraordinary overtime would be "inequitable". La. R.S. 9:315(C)(3)(d)(iii). The trial court's discretion in setting the amount of child support is structured and limited. *State v. Haines*, 17-328 (La. App. 5 Cir. 12/13/17); 234 So.3d 1121, 1124. The standard of review in a child support case is manifest error, and an appellate court will not disturb a child support order unless there is an abuse of discretion or manifest error. *Id*., *citing Gloster*, *supra*.

At the February 5, 2020 hearing, Mr. Dugué's relevant payroll records from Entergy, as well as documentation from the Louisiana Workforce Commission, showed his quarterly earnings from 2017 and the unemployment compensation he received. Mr. Dugué worked at Entergy from October 2014 until May 2018. He estimated his base salary was $37,000 a year at the time he left Entergy. Mr. Dugué explained that "the primary overtime [he] was concerned about" was earned after the flood that resulted from the heavy rainfall in the Baton Rouge area in 2016. According to his Summary of Payroll Records, Mr. Dugué worked 103 hours of overtime from the pay period ending August 13, 2016 through the pay period ending December 3, 2016. Mr. Dugué testified that he earned a total of twelve hours of overtime the first 23 pay periods he worked at Entergy. From January 2017 until his employment ended in May 2018, Mr. Dugué estimated he worked 37 additional pay periods and earned 23 hours of overtime. Mr. Dugué

explained that the opportunity to work overtime in his position at Entergy was not guaranteed, and he rarely worked overtime besides the time period after the flood.

DCFS argues that, pursuant to *Gloster*, *supra*, seasonal overtime should not be considered extraordinary overtime. DCFS also cites to *Montou v. Montou*, 96-1463 (La. App. 3 Cir. 4/2/97); 692 So.2d 705, 707, which held that significant and continuous overtime, although not guaranteed, should not be excluded from gross income when determining the child support obligation. DCFS avers that calculating Mr. Dugué's income using multiple worksheets to account for his fluctuating income is the fairest approach for both parents and is in the best interests of the children in this case. Mr. Dugué counters that extraordinary income in this instance should be excluded pursuant to La. R.S. 9:315(C)(3)(d)(iii), and that DCFS did not meet their burden of proof for their claim.

We find that the district court did not err when it found that the overtime earned by Mr. Dugué was extraordinary, and it did not abuse its discretion when it determined that the extraordinary income should not be included as gross income. In *Gloster*, *supra*, the appellant argued that the juvenile court erred when it calculated the defendant's child support obligation for two different periods based on fluctuations of his income due to different amounts of overtime hours worked, instead of solely using the defendant's monthly income level at the time she filed the motion to modify support. This Court found that the juvenile court correctly calculated the amount of monthly support owed by the defendant based on his incomes for each time period, and that the overtime earned was not extraordinary. However, in *Gloster*, the defendant earned more overtime hours than usual for a period of time because of vacant positions. The defendant's employer explained "that there [was] no guarantee of overtime hours and the past is not a predictor of the future" but "the defendant's overtime hours averaged 94 hours a month [for

five months] and dropped to 54 hours" the month after the employer filled the open positions. Thus, the overtime the defendant earned was significant and not "extraordinary." *Gloster*, 71 So.3d at 1104. To contrast, Mr. Dugué earned 103 hours of overtime pay over five months, because of the 2016 flood[1]; the defendant in *Gloster* earned an average of 94 hours of overtime pay *each month* for five months. Additionally, Mr. Dugué offered his Entergy pay stub records to show that he rarely worked overtime, and when he did work overtime, it was not nearly as much as he did during the time period immediately following the 2016 flood -- an extraordinary, catastrophic event that led to substantial rebuilding efforts.

The instant case is also distinguishable from *Montou*, *supra*, where the defendant earned between $13,000 and $18,000 annually in overtime in addition to his base income of $30,000 the first three years he worked for a federal agency. The defendant's supervisor testified that overtime, while not guaranteed, was "hardly a rarity" and the agency also had a plan to distribute overtime evenly among the agents. The Third Circuit found that the defendant's overtime pay was "significant and continuous" and not extraordinary, and found that the trial court committed manifest error when it excluded the overtime from the calculation of the defendant's gross income. But in *State Through Dep't of Soc. Servs. v. Toledano*, 97-1424 (La. App. 4 Cir. 5/13/98); 713 So.2d 679, 681, the Fourth Circuit determined that although almost a third of the defendant's earnings in 1996 were attributed to overtime pay, the overtime pay was extraordinary because it was not an ordinary part of the defendant's job and was "directly attributable to a unique situation which would not be repeated in subsequent years." The *Toledano* court

---

[1] We take judicial notice of the fact the August 2016 flood was of historic and devastating proportion with widespread flooding [in the Baton Rouge metropolitan area] where approximately 90% of homes and buildings were flooded, and surrounding areas. See La. C.E. art. 201(B) (Judicial notice may be taken of a fact "not subject to reasonable dispute in that it is either ... [g]enerally known within the territorial jurisdiction of the trial court; or ... [c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *State v. Haines*, 17-328 (La. App. 5 Cir. 12/13/17); 234 So.3d 1121, 1128.

found that it was an abuse of discretion for the trial court to include the extraordinary overtime in the defendant's gross income when the defendant's supervisor testified that the defendant could not expect to earn that amount of overtime in subsequent years. *Id*. at 682.

Similarly, Mr. Dugué has provided uncontroverted evidence that the amount of overtime he earned during the flood was extraordinary, and that he, in fact, did not earn a significant amount of overtime during most pay periods. Therefore, we find that the trial court did not err in its determination that the overtime was extraordinary. Accordingly, we also find that the court did not abuse its discretion when it ordered the hearing officer to exclude the extraordinary overtime when recalculating the child support obligations.

*Underemployment*

La. R.S. 9:315(C)(5) defines "income" as "actual gross income of a party, if the party is employed to full capacity" or "potential income of a party, if the party is voluntarily unemployed or underemployed" for the purposes of calculating a party's child support obligation. *State, Dep't of Soc. Ser., ex rel. S.McC. v. J.A.McC.*, 03-108 (La. App. 5 Cir. 5/28/03); 848 So.2d 121, 125. "A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party." La. R.S. 9:315 (C)(5)(b). La. R.S. 9:315.11 provides in pertinent part:

> A. (1) If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. In determining the party's income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey. In determining whether to impute income to a party, the court's considerations shall include, to the extent known, all of the following:
> (a) Assets owned or held by the party.

(b) Residence.
(c) Employment and earnings history.
(d) Job skills.
(e) Educational attainment.
(f) Literacy.
(g) Age and health.
(h) Criminal record and other employment barriers.
(i) Record of seeking work.
(j) The local job market.
(k) The availability of employers willing to hire the noncustodial parent.
(l) Prevailing earnings level in the local community.
(m) Other relevant background factors in the case.

(2) Absent evidence of a party's actual income or income earning potential, there is a rebuttable presumption that the party can earn a weekly gross amount equal to thirty-two hours at a minimum wage, according to the laws of his state of domicile or federal law, whichever is higher.

"'Voluntary underemployment is a fact-driven consideration. The trial court has wide discretion in determining the credibility of witnesses and its factual determinations will not be disturbed on appeal absent a showing of manifest error.'" *State, Dep't of Soc. Ser., ex rel. S.McC.*, 848 So.2d at 125, *quoting State v. Battson*, 36,336 (La. App. 2 Cir. 9/18/02); 828 So.2d 132, 135. "Voluntary underemployment is a question of good faith of the obligor spouse." *Arrington v. Arrington*, 41,012 (La. App. 2 Cir. 4/26/06); 930 So.2d 1068, 1076. "[T]he burden of proving underemployment lies with the party claiming that fact." *State Dep't of Children & Family Servs. Child Support Enf't v. Seaman*, 11-1366 (La. App. 3 Cir. 3/7/12); 86 So.3d 785, 788, *writ denied*, 12-0793 (La. 5/25/12); 90 So.3d 414 (Peters, J., dissenting).

Mr. Dugué testified that he lived with his parents and did not own a residence. He recalled that DCFS seized a bank account of his with a balance of under $800 and also garnished recently earned wages. Mr. Dugué asserted that he has worked since he was nine or ten years old. After leaving the military, Mr. Dugué earned a scholarship to continue his studies and worked as graduate assistant before earning a master's degree in history. Mr. Dugué and his ex-wife's testimony established a consistent employment history: Mr. Dugué "always did

something" and worked part-time jobs when he did not have full-time employment. He was laid off from Entergy in 2018 after his department was downsized. Mr. Dugué testified that he was employed by the International Longshoreman's Union on the river, but was unable to find steady, full-time work through the union, although he went to the office "practically every day." Mr. Dugué further explained that the jobs obtained through the union pay between $12 - $18 dollars an hour, depending on the certifications required. He described obtaining three additional certifications and pursuing additional ones in order to increase his chances of success. Mr. Dugué, trained to teach at the college level, also worked part-time teaching at the post-secondary level. In addition to his work through the Union and teaching, Mr. Dugué freelanced as a grantwriter, networked, and applied for work online and in person. Mr. Dugué told the court that he applied for 25 – 30 jobs in Louisiana and another 20 jobs out-of-state in December 2019, and more than 27 jobs in January 2020, and may have secured a third interview for a position with an insurance company. At the time of the hearing, Mr. Dugué was thirty-eight years old, had no criminal record, and took medication for gastro-intestinal issues.

In its post-trial memorandum, DCFS argued that Mr. Dugué refused to apply for a position as an uncertified teacher, was not seeking appropriate employment in good faith, and instead spent time on the waterfront waiting for union jobs that had not materialized, and was clearly underemployed. DCFS asked the district court to impute the income of a teacher for the New Orleans region according to the Louisiana Occupational Wage Survey to Mr. Dugué.

Upon review of the record, we find that the trial court did not commit manifest error when it determined that Mr. Dugué was not voluntarily underemployed. Mr. Dugué had been out of work for almost nine months at the time of the February 8, 2019 hearing before the hearing officer, and his

unemployment benefits had run out only a month before. DCFS acknowledged that Mr. Dugué lost his job at Entergy through no fault of his own, but there is no support in the record for its assertion that Mr. Dugué refused to apply for *available* positions for certified or uncertified teachers, or other employment in the fields of education, training, and library sciences. DCFS also did not provide evidence regarding the feasibility of Mr. Dugué earning a teaching certification, especially considering that endeavor would require time and money. *See Arrington*, 930 So.2d at 1076-77 (finding that the trial court could conclude that, for determination of "potential income" under La. R.S. 9:315(C)(5)(b), a former deputy's unsuccessful attempts to regain meaningful employment with another law enforcement agency after being out of work for a few months "did not result from the [defendant's] fault or neglect"); *Goss v. Goss*, 95-1406 (La. App. 3 Cir. 5/8/96); 673 So.2d 1366, 1371 (finding the record devoid of evidence that supported plaintiff's allegations that defendant was underemployed because he worked as a carpenter in New Jersey as a "traveler" instead of moving back to Lake Charles and potentially working as a qualified heavy machine operator through the union he still belonged to). There is sufficient evidence in the record to support a finding that Mr. Dugué's attempts to find meaningful employment, comparable in pay and skills required to previous positions he held, showed that his unemployment or underemployment was not a result of neglect on his part. Therefore, the district court did not commit error when it found Mr. Dugué was not voluntarily underemployed, then rejected the hearing officer's recommendation to impute an annual income of $40,000 to Mr. Dugué.

### DECREE

Considering the foregoing, we find that the district court did not commit manifest error when it found that the overtime earned by Mr. Dugué while employed at Entergy was extraordinary, and its order to exclude the extraordinary

overtime from Mr. Dugué's monthly gross income was not an abuse of discretion. Further, we find that the district court did not err when it determined that Mr. Dugué was not voluntarily underemployed and ordered the hearing officer to recalculate the parties' child support and retroactive child support obligations. Accordingly, the district court's April 30, 2020 judgment is affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 24, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 20-CA-292

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
JODY J. FORTUNATO (APPELLANT)       LEKITA G. ROBERTSON (APPELLANT)       ROCH P. POELMAN (APPELLEE)

**MAILED**
AVINGNON M. DUGUE' LOWERY
(APPELLEE)
803 VALLEY RANCH DRIVE
KATY, TX 77450

BLAINE B. MONCRIEF (APPELLANT)
ASSISTANT DISTRICT ATTORNEY
JUVENILE COURT
1546 GRETNA BOULEVARD
HARVEY, LA 70058

HONORABLE PAUL D. CONNICK, JR.
(APPELLANT)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053